UNITED STATES of America, Appellee,

v.

Aldo A. AIUDI, Defendant, Appellant.

No. 87–1463.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1987.

Decided Dec. 29, 1987.

Oleg Nikolyszyn, Providence, R.I., for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

The appellant, Aldo Aiudi, challenges his conviction for various violations of the federal firearms statutes. The sole issue on appeal is whether the district court properly admitted evidence seized during a search of appellant's property.

## I.

The appellant was a firearms dealer who ran a gun shop from his residence at 71 Saint Louis Avenue, Woonsocket, Rhode Island. Aiudi was licensed by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), an executive agency under the auspices of the United States Department of Treasury. The ATF is authorized to monitor the businesses of firearms dealers and may conduct investigations of any irregularities brought to its attention.

Sometime prior to September 24, 1985, the ATF received information that Aiudi was dealing in stolen firearms, knowingly dealing with convicted felons and failing to properly record his transactions. The ATF also had reason to believe that Aiudi illegally possessed and intended to sell several machine guns and stolen handguns. According to an ATF informant, Aiudi was keeping these weapons in a safe located on the Saint Louis Avenue property in Woonsocket.

At the time the ATF began to investigate Aiudi, the Woonsocket police had suspected for some time that Aiudi was receiving stolen goods in violation of state law. Consequently, the police had already been conducting their own inquiry into Aiudi's business dealings prior to the ATF investigation. The ATF and the Woonsocket police cooperated with each other and exchanged information concerning the appellant's activities. Otherwise, the investigations remained independent.

On September 24, 1985, the Woonsocket police executed a warrant authorizing a search of the Aiudi property. Prior to the search, the police contacted Monti Monteiro, the ATF agent in charge of the investigation, to inform him of the planned raid and request his assistance. Agent Monteiro proceeded to 71 Saint Louis Avenue where he found the search already in progress.

Upon arriving, Agent Monteiro reviewed Aiudi's firearms records and the inventory of firearms kept on the premises. As a result of this review, Agent Monteiro concluded that there was evidence of several federal firearms violations. He instructed the Woonsocket police to seize all of the weapons located on the premises including the firearms used to convict Aiudi at trial. The weapons were placed in a large truck which the Woonsocket police had brought to the scene to transport the evidence they had expected to seize for their own purposes. These firearms were later turned over to the federal government.

* Of the District of Massachusetts, sitting by designation.

Aiudi was subsequently indicted for a number of federal criminal charges. The defendant moved to suppress the evidence obtained during the search on the grounds that the warrant obtained by the Woonsocket police was invalid and therefore, the search and seizure violated his Fourth Amendment rights. Although the district court agreed with the appellant that the warrant obtained by the Woonsocket police was fatally defective, the court refused to suppress the evidence because of its finding that no valid warrant was required for an ATF search and seizure. The court reasoned that Agent Monteiro was authorized by 18 U.S.C. § 923(g) to conduct a warrantless search and seizure on the premises.[1] Since the evidence was removed from the premises by the Woonsocket police per Agent Monteiro's instructions, no Fourth Amendment right was violated. The defendant was subsequently convicted on all counts and filed this appeal. For the reasons stated below, we affirm the district court.

## II.

The appellant has framed the issue on appeal as whether the firearms were illegally seized by the Woonsocket police prior to the time the ATF agent arrived at the scene. Starting with the premise that evidence which is seized by state officers in violation of the Fourth Amendment cannot be turned over to the federal government for use in a federal prosecution, the appellant argues that it is irrelevant that Agent Monteiro had authority to conduct a warrantless search and seizure because the weapons were effectively seized by the Woonsocket police before Agent Monteiro arrived. Because the police did not have a valid warrant, the evidence must be excluded as the fruits of an illegal search. The appellant further asserts that the district court made no finding as to when the seizure occurred.

The government argues for its part that the seizure of the weapons worked no

Fourth Amendment wrong because the state officers in this case acted with and at the direction of a federal officer who had authority to seize the weapons without a warrant. The seizure was therefore a federal seizure which was lawful in spite of the concededly defective warrant obtained by the Woonsocket police.

We agree with the appellant that the district court did not specifically address the issue of whether the weapons might already have been seized within the meaning of the Fourth Amendment before Agent Monteiro arrived at the Aiudi premises. We find, however, that this issue has little relevance in determining whether the appellant was entitled to suppression of the evidence. For even assuming that the appellant is correct in his contention that the weapons were in fact seized by the Woonsocket police in violation of the Fourth Amendment, it does not necessarily follow that the evidence must be excluded.

The exclusionary rule is a judicially created remedy designed to effectuate the Fourth Amendment guarantees against unreasonable searches and seizures, not a personal right of a criminal defendant. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974); *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). Its purpose is to deter police misconduct by eliminating the incentive for police officers to disregard constitutional requirements on the chance they may turn up evidence which would incriminate a defendant. *Stone v. Powell*, 428 U.S. at 492, 96 S.Ct. at 3051. It is well recognized that the costs of the rule may in some instances outweigh the benefits it provides in terms of deterring police misconduct. *United States v. Leon*, 468 U.S. 897, 908, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1983); *Stone v. Powell*, 428 U.S. at 493, 96 S.Ct. at 3051.

Without regard for the foregoing principles, the appellant relies on *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), to prove that a fed-

---

1. Section 923 (g) has been substantially modified since the events at issue in this case took place.

eral prosecutor may not use evidence illegally seized by state officers. This reliance is misplaced. *Elkins* does not state that such evidence may never be used by federal prosecutors under any circumstances. Instead, *Elkins* teaches that federal prosecutors cannot use evidence illegally procured by state officials when the "evidence [was] obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures...." *Id.* at 223, 80 S.Ct. at 1447. The *Elkins* rule was designed to protect Fourth Amendment rights by eliminating the incentive for federal law enforcement officials to encourage lawless searches and seizures by state officers. *Id.* at 221–222, 80 S.Ct. at 1446–1447. Where, as in this case, no incentive exists for federal officials to encourage misconduct by state police, exclusion of state-seized evidence is inappropriate without first considering whether the benefit obtained from excluding the evidence outweighs the resulting costs.

■ Turning to the case at hand, we find that the benefit to be obtained from applying the exclusionary rule is insignificant when compared to the costs. In this case, the ATF had authority to enter the Aiudi premises without a warrant, search the records and inventory of the appellant and seize whatever evidence of firearms violations its agent uncovered. The ATF did not need the assistance of the Woonsocket police to acquire this evidence. Because the AFT could legally do exactly what the appellant claims the Woonsocket police did unlawfully, admitting this evidence at trial does not give the ATF an incentive to encourage state law enforcement officials to violate the safeguards afforded by the Fourth Amendment. Nor would it cause federal officials to be less sensitive to their own responsibilities under the Constitution. Thus, to prohibit the federal government from using the evidence at issue in this case would serve only to penalize the government for the misconduct of others.

It is true that exclusion of this evidence may deter the Woonsocket police from future unlawful conduct. However, we think that this benefit is minimal in light of the penalty that exclusion would impose on the federal government in this case. The record shows that the Woonsocket police had entered the Aiudi premises to search for evidence that the appellant had violated state law, not federal. Consequently, the state police had only an indirect interest in the prosecution of Aiudi for federal criminal violations. The evidence would presumably be excluded at a state trial on the alleged state offenses; this is a more 'close-fitting' deterrent for the violations here. On the other hand, the ATF had already committed time and resources to its own independent investigation of Aiudi's activities at the time the Woonsocket police executed the invalid search warrant. More importantly, an ATF agent was present when the search and seizure was concluded. Contrary to appellant's assertions, this is not a case where the federal government simply sat back and allowed illegally seized evidence to be handed to them on a "silver platter." *Cf. Elkins v. United States,* 364 U.S. at 208, 80 S.Ct. at 1439. To exclude this evidence would result in the waste of time and energy on the part of the ATF through no fault of its own.

It should also be noted that to exclude this evidence may well be costly in terms of its effect on the commendable practice of state and federal cooperation in criminal investigations. If this evidence is excluded, federal officers may hesitate to involve state officials in future investigative efforts for fear that an error on the state's part would destroy many months of effort on the part of federal agents. Where federal agents have the authority to conduct warrantless searches and seizures, it would be foolhardy to risk the fruits of an investigation by seeking assistance from state officials who do not have such authority.

*Affirmed.*