UNITED STATES of America, Appellee,

v.

Michael D. McKENNA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Robert V. CAMPO,
Defendant, Appellant.

Nos. 86–1937, 86–1938.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1989.

Decided Nov. 16, 1989.

Vincent R. Brogna, Boston, Mass., with whom Ralph M. Champa, was on joint brief for defendants-appellants.

Ralph D. Gants, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for the U.S.

Before SELYA, Circuit Judge, ALDRICH and FLOYD R. GIBSON,* Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellants Michael McKenna and Robert Campo were indicted and convicted by a jury under the Hobbs Act, 18 U.S.C.

* The Honorable Floyd R. Gibson, of the Eighth Circuit, sitting by designation.

§ 1951, for one count each of conspiracy to commit extortion and one count each of attempted extortion. On appeal they jointly argue that their extortionate conduct did not have an effect on interstate commerce sufficient to meet the jurisdictional requirement of the Hobbs Act and that the district court erred by failing to instruct the jury on entrapment. Individually, McKenna argues that the district court erred by excluding certain medical testimony relevant to his defense of entrapment. We find that there was sufficient effect on interstate commerce and no error by the district court and, accordingly, affirm the convictions.

### I.

Although the period covered by the indictment spanned only five months, from January to May of 1983, this case actually began several years earlier. We briefly sketch out the facts which establish the extortionate conduct and leave fuller examination of other relevant facts to the discussion of appellants' arguments.

Appellants were residents and officials of the city of Somerville, Massachusetts. Michael McKenna was an alderman in the city and an administrative aide in the office of his father, state senator McKenna, whose district included Somerville. Robert Campo was Michael McKenna's father-in-law and a member of the Board of Assessors in Somerville. The appellants conspired and attempted to extort money under color of their offices from East Bay Development Company (EBD).

EBD was a Michigan corporation doing business in Massachusetts on the development of commercial projects, including one in Somerville known as the Mall at Assembly Square. EBD had been contacted by the FBI in connection with the investigation of Robert Goodoak, who consulted for EBD.[1] In January 1981 EBD agreed to cooperate with the FBI and allowed FBI Agent John Callahan to operate as an employee of EBD under the fictitious name of Jack Collins. As Collins, Callahan met with officials in Somerville to make arrangements that would facilitate construction of the Assembly Square project for EBD. Assembly Square included a retail shopping mall, an office building, and plans for a hotel. The hotel would house a restaurant and/or a bar, and commercial success depended on the availability of liquor licenses.

The short of the story thereafter is that Callahan, the appellants, and another Somerville alderman named Creedon worked out an agreement whereby the Board of Aldermen would draft and pass a home rule petition setting aside two already-available Somerville liquor licenses for the Assembly Square project in exchange for pay-offs from EBD through Callahan. The money actually paid was from the FBI. When the petition was sent to the state legislature, the appellants would use their influence, particularly with McKenna's father, to have the petition expediently passed into law. All of this did in fact transpire. The petition was passed by the Massachusetts legislature and signed into law by the Governor of Massachusetts in May 1983.[2]

Appellant McKenna received $500 for his vote as an alderman on the home rule

---

1. Goodoak was convicted in a separate case under the Hobbs Act and appealed to this court. The facts and opinion of that case are published at *United States v. Goodoak,* 836 F.2d 708 (1st Cir.1988).

2. The legislation, passed as Ch. 135 of the Acts of 1983, read in pertinent part:

    AN ACT RELATIVE TO THE SALE OF ALCOHOLIC BEVERAGES IN THE CITY OF SOMERVILLE.

    *Be it enacted, etc., as follows:*

    Chapter 258 of the acts of 1980 is hereby amended by adding the following paragraph:—

    Said licensing commission is hereby authorized and directed to assign two licenses for the sale of all alcoholic beverages to be drunk on the premises, to the area known and bounded as the Assembly Square Commercial Area Revitalization District. Said licenses shall be allocated from among those authorized to be granted under the provisions of the first paragraph and they shall not increase in any way the number of such licenses now or hereafter available in said city.

    ....

petition. No money was paid to either him or Campo for their efforts in the legislature.[3]

## II.

The heart of appellants' argument against jurisdiction under the Hobbs Act[4] is insufficiency of the evidence. However, they frame the argument as having three parts: A) that the district court should have ruled as a matter of law that there was no jurisdiction rather than let the question go to the jury; B) that the evidence was insufficient to support the jury's verdict; and C) that the jury was erroneously instructed on the interstate commerce element.

## A.

■■■■ The first two parts of appellants' jurisdictional argument are both resolved by a review of the sufficiency of the evidence. Whether or not interstate commerce is affected under the Hobbs Act is a mixed question of law and fact. The district court must determine if, as a matter of law, interstate commerce could be affected. If the court determines it could be, the question is turned over to the jury to determine if, as a matter of fact, interstate commerce was affected as the district court charged it could have been. *See United States v. O'Malley*, 796 F.2d 891, 897–98 (7th Cir.1986). Because we ultimately find there was evidence sufficient to support the jury verdict, we necessarily find there

was sufficient evidence to let the question go to the jury. Thus, it was not error for the district court to put the question to the jury.

## B.

■ At the close of the evidence appellants made a motion for a directed verdict which we treat as a motion for judgment of acquittal. Fed.R.Crim.P. 29. The district court denied the motion. In reviewing a denial of such a motion, we view the evidence in the light most favorable to the government drawing all reasonable inferences that could support the verdict. *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981).

The appellants argue that the evidence was insufficient to support the jury's finding on interstate commerce for several reasons: 1) the home rule petition created no new liquor licenses and did not result in the issuance of a liquor license to anyone; 2) a hotel could not have been built during the period of the indictment; and 3) EBD was not engaged in interstate commerce during the period of the indictment. We find each of these arguments unpersuasive in light of the evidence and the broad reach of Congress' commerce powers under the Hobbs Act as consistently interpreted in this circuit.

As recently as last year this circuit reiterated the government's burden. "[T]he government need only show a realistic

---

**3.** In an unrelated, but overlapping case, Campo had extorted funds from Callahan in exchange for a lower assessed value on Assembly Square. Campo pled guilty and is serving a separate sentence for that crime.

**4.** The relevant portions of the Hobbs Act are as follows:

§ 1951. Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

.    .    .    .    .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951 (1982).

probability of a de minimis effect on interstate commerce, in order to bring extortion within the reach of the Hobbs Act." *United States v. Rivera–Medina,* 845 F.2d 12, 15 (1st Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 109 S.Ct. 160, 102 L.Ed.2d 131 (1988). In light of that small burden, and viewing the evidence in the government's favor as we must, we believe that the facts demonstrate at least a de minimis effect.

Although the home rule petition itself created no new liquor licenses nor waived any of the formal requirements for application for a license, it clearly set aside two liquor licenses for use only in Assembly Square. It is specious for the appellants to argue that they would make efforts to pass such a petition but that it would have no effect on the availability of licenses to businesses potentially going into Assembly Square. It is all but undeniable that a business with a liquor license would do business in interstate commerce. It follows that where the home rule petition facilitated, albeit remotely, the availability of a liquor license, a jury could find that the petition had a realistic probability of affecting interstate commerce.

Despite that, appellants insist that it was improbable, if not impossible, that a liquor license would have been issued to anyone in this case. They point to the testimony of the option-holder on the hotel site in Assembly Square that he did not build because he could not obtain financing and that he did not even know of the existence of the home rule petition. Thus, they argue, liquor would never have travelled in interstate commerce as a result of the home rule petition during the period of the indictment.

The appellants adopt too myopic a reading of the evidence and the meaning of "realistic probability." The movement of liquor across state lines is not all that could trigger jurisdiction under the Hobbs Act in this case. The jury could reasonably believe interstate commerce was potentially affected in other ways. The increased availability of the liquor licenses may have had an effect on the value of the real estate at Assembly Square and thus had an effect on the assets of a company doing interstate business. *See United States v. Hathaway,* 534 F.2d 386, 396–97 (1st Cir.), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). As well, the increased availability of licenses may have increased the likelihood that a hotel would or could be built at Assembly Square and thus had a realistic probability of having a de minimis effect on interstate commerce. *See United States v. DiGregorio,* 605 F.2d 1184, 1191 (1st Cir.) (stating that even if nothing was built "during the period involved, the extortion could be reasonably thought to interfere with probable future interstate commerce...."), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979).[5]

While appellants claim that EBD was not doing business in interstate commerce during the period of the indictment, that assertion was disputed by the district court, and true or not, it does not alone answer the question of whether the home rule petition had a realistic probability of affecting interstate commerce. There was sufficient evidence presented (the potential movement of liquor in interstate commerce, the deple-

---

5. Appellants argue that the instructions to the jury directed the jury to consider only effects on interstate commerce that occurred during the period of the indictment, and that the "law of the case" doctrine compels the appellants' acquittal because no effect could have occurred during that short period of time. The court charged the jury that "You just consider this the required realistic probability of an effect on interstate commerce at the time of the offense charged, that is, January, '83 to May of '83. Not today. That's the critical time. January to May, 1983." Record at Vol. 9, p. 19. We disagree with appellants. It is clear that potential, future effects may be the basis for interstate

commerce jurisdiction. *DiGregorio,* 605 F.2d at 1191. We believe the charge to the jury only limited their consideration of the appellants' *actions* during January to May of 1983. The jury was not required to consider only possible *effects* of those actions during that time. Even if the instruction is read as narrowly as the appellants read it, we cannot say that a reasonable jury could not find a realistic probability of effect on interstate commerce during the prescribed period. As we discuss in the body of this opinion, there are several conceivable effects that might have touched interstate commerce during early 1983.

tion of assets of EBD or a potential developer of the hotel site) that could allow a reasonable jury to conclude that interstate commerce was affected. Despite the appellants' argument that extending coverage under the Hobbs Act to the facts of this case goes too far, we believe, as the government suggested in its brief, that there are a variety of ways interstate commerce could have been affected by the extortionate conduct of the appellants that do not go beyond existing case law. As in *Rivera–Medina*, 845 F.2d at 15, we find the jury could find a potential effect on interstate commerce in this case.

### C.

Appellants' final argument against jurisdiction is that the jury instructions regarding the "effect on interstate commerce" issue were "misleading and so prejudicial as to compel a new trial." We review instructions in light of the whole charge and the whole trial, not singularly. *United States v. Serino*, 835 F.2d 924, 930 (1st Cir.1987).

■ The appellants first object to that part of a charge that told the jury to consider "minimal depletion of resources of a hotel that was built, or under construction or a minimal effect or depletion of resources on a company that was going to build a facility that would attract people from interstate commerce." Record at Vol. 9, p. 19. Appellants argue that there was no evidence that they attempted to extort money from a hotel or a company that might build one. However, as we pointed out above, the jury might have found an effect on interstate commerce from many possible activities, including effects on a potential developer or hotel. This charge to the jury correctly states the law with respect to depletion of assets having an effect on interstate commerce. *See United States v. Jarabek*, 726 F.2d 889, 901 (1st Cir.1984); *United States v. DiGregorio*, 605 F.2d at 1191; *United States v. Hathaway*, 534 F.2d at 397. We cannot say it was given in error.

■ Appellants also object to the instruction which read in part: "... here the question is did the defendants attempt to exploit a reasonable belief to the victim that the defendants had effective influence over this legislation and could affect it in some way, not only this legislation but other matters of public interest, to East Bay or to these affiliated companies, other legislative matters that might come before the office of the senator or the board of aldermen or the board of assessors." Record at Vol. 9, p. 26.

The appellants' reliance on *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), to support their argument against this instruction warrants some discussion. In *Stirone* the Supreme Court found that the jury might have considered evidence of conduct not charged in the indictment against the defendants. Thus the defendants were possibly convicted of actions they had not been charged with, and the Court reversed the convictions. Appellants suggest that the above-quoted instruction permitted their jury to consider conduct not charged in the indictment,[6] i.e., allowed a constructive amendment of the indictment. *See United States v. Dunn*, 758 F.2d 30, 35 (1st Cir.1985). That is a serious argument which we do not treat lightly because of the strong Fifth and Sixth Amendment guarantees that are implicated. Nevertheless, we believe that the issue is disposed of by *United States v. Kelly*, 722 F.2d 873 (1st Cir. 1983), *cert. denied*, 465 U.S. 1070, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984), and a reading of the indictment itself.

*Kelly* stated that "the standard of review that we must employ ... is whether [appellants have] made a convincing showing that the alleged alteration in the indictment did in fact change the elements of the offense charged, and whether [they were] convicted of a crime not charged in the grand jury indictment." *Id.* at 876. The indictment in this case charged that the appellants extorted money by "wrongful

---

6. In particular, appellants suggest that the jury considered evidence of Campo's tax extortion, *see* footnote 3, *supra*, in reaching its verdict on the charges in this case.

use of fear or economic harm, or under color of official right," tracking the very language of the Hobbs Act at § 1951(b)(2).

"[T]he accepted interpretation of the 'under color of official right' language has evolved in such a manner that it does not exclude the introduction of proof of threats inherent in the public office. The rationale is, that subsumed in the official title lies a dormant power, the office itself becomes the threat, the ominous spectre capable of retaliating when provoked." *Kelly*, 722 F.2d at 877 (citations omitted).

There is a dispute as to whether or not the appellants properly objected to the instruction at trial so as to preserve it for our review. We do not reach the question. Under either plain error analysis or the heightened review we give a preserved objection, we do not believe the appellants made a convincing showing that this instruction, when viewed as part of the instructions and the trial as a whole, was prejudicial.

The instruction does not misstate the law with respect to "color of official right" or permit the appellants to be confronted with a charge of which they had no notice. The indictment, by charging conduct under color of official right, and in turn the interpretation case law has given "color of official right," properly allowed the evidence that the appellants claimed to have influence in the state legislature and their own offices on the liquor legislation as well as on other potential legislation in those places. All of which are "threats inherent in the public office." Thus, the instruction did not permit a constructive amendment of the indictment.

### III.

■ Appellants next argue that the district court erred by failing to give an instruction on entrapment. Our standard of review of such a decision is plenary, and we make the determination based on the legal sufficiency of the evidence. *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir. 1988).

Entrapment is analyzed in two parts: inducement by the government and the accused's lack of predisposition to commit the criminal conduct. *Id.* "[A] defendant is entitled to a jury instruction on entrapment if there is record evidence which fairly supports the claims of both government inducement of the crime and defendant's lack of predisposition to engage in it." *Id.* at 814. This has been called the defendant's entry-level burden of production.

We have examined the evidence in the light most favorable to the appellants in our review of the lengthy transcripts of the taped conversations from this case and find no "hard evidence" that appellants were induced by the government; in fact the evidence is to the contrary. The same can be said with respect to the evidence on predisposition. Because the case is not close at all in this regard, we do not engage in an unnecessary review of the facts. It is sufficient to say the appellants failed to meet their entry-level burden.

As to the appellants' argument that they were entrapped by a third party, we note that in *United States v. Bradley*, 820 F.2d 3, 8 (1st Cir.1987), we declined to give that argument validity absent a showing that the government instructed the third party to put pressure on the defendant. *United States v. Murphy*, 852 F.2d 1, 6 (1st Cir. 1988), *cert. denied*, — U.S. —, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). There is no evidence of that in this case; the appellants came on their own to extort money from EBD through FBI Agent Callahan.

Appellants at oral argument made a suggestion that they fell within an "exception" to their entry-level burden of production on predisposition expressed in *Bradley*. In *Bradley* we noted that "[e]ven a willing defendant may claim a violation of due process if the government's conduct" was outrageous enough to demonstrate overinvolvement. *Bradley*, 820 F.2d at 7 (citations omitted). That language merely recognizes the existence of a due process claim and carves no real exception to the entry-level burden on entrapment. We do not believe the appellants preserved a due process argument for review. In any event, the conduct of the government in

this case demonstrates no overinvolvement, if any, of the scale necessary to create a due process claim.

Finally, under entrapment, appellant McKenna separately argues that the district court wrongly excluded expert medical testimony on the question of his susceptibility to inducement to commit crimes. We cannot say that the district court abused its broad discretion in evidentiary matters by excluding this evidence.

We find no error in the proceedings or the judgment of the district court; the appellants' convictions are affirmed.

*Affirmed.*