**UNITED STATES of America, Appellee,**

v.

**James L. PRATT, Jr.,
Defendant, Appellant.**

No. 89–1964.

United States Court of Appeals,
First Circuit.

Heard May 7, 1990.

Decided Aug. 28, 1990.

Conrad W. Fisher, with whom Fisher, Mandell & Newlands and Donald A. Harwood, were on brief, for defendant, appellant.

C. Jeffrey Kinder, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

James L. Pratt brings this appeal from a jury verdict convicting him of conspiracy to possess with intent to distribute five hundred or more grams of cocaine.[1] 21 U.S.C. § 846. The United States District Court for the District of Massachusetts denied appellant's motions for a judgment of acquittal and for a new trial, and sentenced him to twenty-one years and eight months of incarceration, with a four year term of supervised release. This appeal followed.

## I. BACKGROUND

On January 3, 1989, the Hampshire/Franklin County Crime Prevention and Control Unit ("CPAC") was approached by an informant, Walter Wheeler, who sought to exchange his cooperation in the instant case for government assistance with a pending state charge against him. The case was subsequently referred by CPAC to the Western Massachusetts Narcotics Task Force ("Task Force"), a federal agency comprised of federal, state and local police officers assigned to do narcotics work. A federal Drug Enforcement Administration ("DEA") agent heads the Task Force.

Wheeler's first meeting with the Task Force took place in the Federal Building at DEA offices in Springfield, Massachusetts on January 10, 1989. At that meeting, he provided certain information about Pratt, with whom he had been incarcerated, linking Pratt to cocaine trafficking. Thereafter, it was agreed that Wheeler would place a telephone call to appellant and attempt to arrange a meeting between Pratt, himself, and Detective Luis M. Rodríguez. Rodríquez was a deputized Federal Agent assigned to the Task Force, although he was also associated with the Chicopee, Massachusetts Police Department.

Shortly after 7:00 p.m. that evening, Wheeler reached Pratt by telephone and the two agreed to meet at the Yankee Peddlar Restaurant in Holyoke, Massachusetts at 8:15 p.m. This conversation was recorded.[2] At about 8:00 p.m., Pratt arrived at the appointed place in a yellow Saab driven by the co-defendant. The Saab parked next to a black Camaro occupied by Agent Rodríguez, who was wearing a body wire, and Wheeler. After introductions were made, Rodriguez offered to sell appellant a kilogram of cocaine for $15,000, rather than his "usual price" of $22,000, because of Pratt's connection with Wheeler. At one point, Pratt or Wheeler apparently told the other that this transaction was a sort of "payback" for Pratt's having bailed Wheeler out of jail. Having only $5,000, Pratt inquired about Rodríguez' willingness to sell an "eightball," or one-eighth of an ounce of cocaine. Rodríguez told appel-

---

1. The jury failed to reach a unanimous verdict as to the only co-defendant, and a mistrial was declared on the co-defendant's case.

2. On appeal, Pratt contends that statements made during this recording make it clear that Wheeler had spoken to appellant on at least one previous occasion.

lant that he did not have any cocaine with him, but that, in any case, he would only sell kilo packages.

Pratt and Agent Rodriguez arranged a second meeting for January 12th at 8:00 p.m. in the same parking lot. Appellant failed to appear. Thereafter, two telephone calls were made to Pratt. During both of these conversations, appellant indicated that he was having difficulty raising the $15,000. Pratt proposed an alternative plan, wherein Rodriguez would take $6,000 cash and title to a new Camaro automobile as security for the remainder. Rodriguez agreed.

The next contact between Rodriguez and Pratt occurred on January 17th at 10:30 p.m. At that time, Rodriguez received a call from Pratt on his beeper, and Rodriguez returned the call.[3] During this telephone conversation, Pratt indicated that he had $15,000 and wanted to "do the deal" that night. Rodriguez, however, suggested that they meet the following day.

The next morning, Rodriguez called Pratt. During that conversation, which was recorded, Rodriguez told appellant that, while Wheeler had informed him that appellant only had $12,500, he was willing to take that sum for the kilogram. A meeting was arranged for 1:00 p.m. at the Yankee Peddlar.

Rodriguez arrived at the Yankee Peddlar at 12:30 p.m., accompanied by Task Force Agent Ron Campurciani. Approximately 15 to 20 other officers were stationed in various areas of the parking lot. Sometime later, Pratt arrived in a 1980 Chevrolet Citation, driven by the co-defendant. Rodriguez entered Pratt's car, and a recorded conversation ensued. Pratt told him the money was in his jacket, and Rodriguez then took the money and counted it. After Rodriguez finished counting the money, he suggested that they go to his car to check the cocaine and to meet Agent Campurciani, who Rodriguez explained was his "runner." Once Campur-

ciani opened the car's trunk, the police surveillance team moved in to effect arrests of both Pratt and the co-defendant. $12,500 was seized from the Chevy Citation.

On appeal, appellant makes several claims of error, each of which we review *seriatim.*

## II. DENIAL OF MOTION TO SUPPRESS ELECTRONICALLY INTERCEPTED COMMUNICATIONS

At trial, Pratt moved to suppress the electronically intercepted conversations involving himself, Wheeler and Agent Rodriguez. It is uncontested that the conversations were recorded without a wiretap warrant and without appellant's knowledge or consent. Appellant sought to establish that the investigation was conducted primarily by state, rather than federal law enforcement officers, and hence that the Massachusetts wiretap statute, Mass. Gen.L. ch. 272, § 99, rather than federal law, 18 U.S.C. § 2510 *et seq.* (1982), governed the admissibility of the evidence. *See United States v. Jarabek,* 726 F.2d 889, 900 n. 10 (1st Cir.1984) (dictum) (where state officers knowingly violate state law without federal involvement, state law *may* apply in federal prosecution); *United States v. Daniel,* 667 F.2d 783, 785 (9th Cir.1982) (discussing, but not deciding the issue). The Massachusetts statute prohibits use of electronically intercepted communications unless both parties consent to the interception, or unless one party consents and the eavesdropper is a law enforcement officer investigating organized crime.[4] The district court denied appellant's motion on the theory that federal law governed the admissibility of the evidence, and permitted introduction of the recordings.

On appeal, Pratt first argues that the district court found that the investigation "was primarily a state operation," and therefore, that state law should have been applied. He contends that, since this is a

---

**3.** This conversation may or may not have been recorded.

**4.** In the briefs submitted to this court, the government concedes that this case does not involve organized crime, and thus that application of Massachusetts law would result in the recordings being deemed inadmissible.

factual finding, it is reviewable only for clear error. *E.g., United States v. Cruz Jiménez*, 894 F.2d 1, 7–8 (1st Cir.1990). While we will not disagree with this statement of the standard of review associated with factual findings, we do find fault with appellant's statement of the fact itself.

■ Appellant's interpretation of the district court's statement supports his position only if one reads the statement out of the context in which it was made. The whole statement was, "[t]he Court's impression, based on the record before it, is that this was primarily a state operation." Not only was this comment made before the trial began, but it was also made expressly conditional upon the facts before the court at that time. It is clear from the record that, at that point, the district court had heard no evidence regarding the referral of the case from the state CPAC Unit to the federal Task Force, or of the ensuing federal investigation. Thus, Pratt's emphasis of this single statement does not persuade this court that an error was made below.

Having thus concluded, we turn to the merits of the claim itself. On appeal, appellant argues that the district court's denial of his motion to suppress the recordings, on the grounds that *United States v. Aiudi*, 835 F.2d 943 (1st Cir.1987), *cert. denied*, 485 U.S. 978, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), eliminated the need for such exclusion, constituted reversible error. In *Aiudi*, this court held that a search conducted by state police officers pursuant to an invalid warrant did not necessitate suppression of the evidence in federal court because a federal agent, who was at the scene at the time of the search, had authority to enter the premises without a warrant to do "legally ... exactly what ... the (state) police did unlawfully." *United States v. Aiudi*, 835 F.2d at 946.

Appellant contends that *United States v. Aiudi* is distinguishable from the case at bar. He argues that the *Aiudi* rule applies only when a federal agency is conducting an investigation independent of that of state officers, and therefore has no incentive to encourage misconduct by state police. Pratt contends, however, that in this case, although federal officers were aware of the investigation, they were not participants. Thus, he concludes that this is a case "where the federal government sat back and allowed illegally seized evidence to be handed them on a 'silver platter,'" *id.* at 946, thus mandating suppression of the evidence. Finally, appellant argues that *Aiudi* did not involve wiretap surveillance, and therefore has little applicability to the instant case.

■ After review of the record, we think it evident both that *Aiudi* was correctly utilized by the district court and that the investigation was primarily a federal affair. *Aiudi*, in applying *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), stated that "*Elkins* teaches that federal prosecutors cannot use evidence illegally procured by state officials when the 'evidence [was] obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures.'" *Aiudi*, 835 F.2d at 946 (citing *Elkins v. United States*, 364 U.S. at 223, 80 S.Ct. at 1447). *Aiudi*, therefore, applies to exclude evidence only where the evidence is state-seized, and where the federal officers lacked the authority to legally obtain what state officers took illegally. *Aiudi*, 835 F.2d at 946.

In this case, it is clear that federal officers did have the authority to record the conversation, and thus had no incentive to encourage unlawful conduct on the part of the state officers. While it is certainly true, as a general rule, that eavesdropping and wiretapping are permissible only with probable cause and a warrant, *e.g., Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, *reh'g denied, Ivanov v. United States*, 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969), under federal law, consent of one party to a conversation is sufficient to permit "a person acting under color of law to [lawfully] intercept a wire, oral, or electronic communication ..." 18 U.S.C.A. § 2511(c) (West Supp.1990). *See also Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967). Although Massachusetts law goes further to protect the privacy rights of both parties to a conversation than does federal law, Mass.Gen.L. ch. 272, § 99, it is well settled that, in federal prosecutions, evidence admissible under federal law cannot be excluded simply because it would be inadmissible under state law, and the district court was correct in so concluding. *E.g.*, *United States v. Mitro*, 880 F.2d 1480, 1485 n. 7 (1st Cir.1989).

■ Moreover, in this case, the disputed evidence cannot be said to be "state-seized," having been, at most, the product of a joint federal-state investigation. Consequently, as the district court properly held, *Aiudi* does not require suppression of the evidence. Although Wheeler's initial contact with law enforcement authorities was with state and local police, the case was immediately referred to the Western Massachusetts Narcotics Task Force. The Task Force was comprised of state and local law enforcement officers as well as federal agents, but it was headed by a federal DEA agent, and the agent assigned to investigate the instant case was a deputized federal agent. Moreover, Wheeler's first meeting with the Task Force took place at the Drug Enforcement Administration's offices in the Federal Building in Springfield, Massachusetts, and all but one of the persons at the meeting was a member of the Task Force. From the evidence before this court and the district court, it appears that, after the case was referred to the Task Force, it was investigated exclusively by Task Force personnel.

■ Even if the investigation could not entirely be considered a federal venture, under *United States v. Jarabek*, the admissibility of evidence obtained during a joint federal-state investigation for use in a federal criminal trial is governed by federal law. *United States v. Jarabek*, 726 F.2d at 900. *See, e.g.*, *United States v. Butera*, 677 F.2d 1376, 1380 (11th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269 46 L.Ed.2d 251 (1975). In *Jarabek*, this court

held that the more restrictive provisions of the Massachusetts electronic interception statute did not apply to a joint federal-state investigation. *See also United States v. Butera*, 677 F.2d at 1380; *United States v. Horton*, 601 F.2d 319, 323 (7th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Nelligan*, 573 F.2d 251, 253 (5th Cir.1978); *United States v. Shaffer*, 520 F.2d 1369, 1371–72 (3d Cir.1975) (per curiam), *cert. denied*, *Vespe v. United States*, 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976).

■ Nor does the fact that Agent Rodriguez was a member of the Chicopee, Massachusetts Police Department, as well as being a member of the Task Force, render federal law inapplicable. *United States v. Butera*, 677 F.2d at 1380; *United States v. Nelligan*, 573 F.2d at 253. During the course of the investigation, Agent Rodríguez was clearly acting in his capacity as a deputized federal agent for the Task Force. *See United States v. Gray*, 626 F.2d 102, 105–06 (9th Cir.1980) (state officers working with the DEA were acting in a "federal capacity" at time of search, rendering federal law applicable).

Given the facts of this case, the district court did not err in concluding that the investigation was primarily conducted by federal officials, and thus that suppression of the recordings was not required by federal law.

## III. ENTRAPMENT

■ At trial, appellant sought to justify his behavior on the theory that he had been entrapped, a defense which is premised on the principle that a defendant may not be found guilty of criminal conduct which is "the product of the creative activity" of law enforcement officials. *Sorrells v. United States*, 287 U.S. 435, 441, 451, 53 S.Ct. 210, 212, 216, 77 L.Ed. 413 (1932). In *Sorrells*, the Court stated that entrapment occurs "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Id.* at

442, 53 S.Ct. at 212–13 (*quoted in Kadis v. United States*, 373 F.2d 370, 372 (1st Cir.1967)). *See also Newman v. United States*, 299 F. 128, 131 (4th Cir.1924). As the doctrine has evolved, a two stage inquiry is relevant to the issue of entrapment: (1) whether there was government inducement of the crime; and (2) whether the defendant was predisposed to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. McKenna*, 889 F.2d 1168, 1174 (1st Cir. 1989); *United States v. Rodríguez*, 858 F.2d 809, 812 (1st Cir.1988); *United States v. Polito*, 856 F.2d 414, 415–16 (1st Cir. 1988); *Kadis v. United States*, 373 F.2d at 372 (citing *United States v. Sherman*, 200 F.2d 880 (2d Cir.1952)). *See also Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). On appeal, appellant avers that the district court erred in excluding certain testimony related to the defense, as well as by refusing to instruct the jury on entrapment.

## A. *Submission to the Jury*

▮ The question of whether entrapment occurred is factual in nature, and requires submission to the jury if there is "some evidence" of it. *Kadis v. United States*, 373 F.2d at 374.

> If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness. *See United States v. Riley*, 363 F.2d 955 (2d Cir.1966).

*Kadis v. United States*, 373 F.2d at 374. The quantum of evidence needed to reach the level of "some evidence" "need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal, *cf. McDonald v. United States*, 312 F.2d 847, 849 (D.C.Cir.1962), but it must be more than a mere scintilla ... However, any evidence, whether introduced by the defense or by the prosecution, that the government agents went beyond a simple request and pleaded or argued with the defendant, should be enough." *Kadis v. United States*, 373 F.2d at 374. But it is the defendant who has the burden of proving that entrapment occurred. *United States v. Rodríguez*, 858 F.2d at 812; *United States v. Coady*, 809 F.2d 119, 122 (1st Cir.1987). In meeting that burden, the defendant must make a showing "that a government agent turned him from a righteous path to an iniquitous one ..." *United States v. Coady*, 809 F.2d at 122. *See also United States v. Rodrígues*, 433 F.2d 760, 761 (1st Cir.1970), *cert. denied*, *Rodríguez v. United States*, 401 U.S. 943, 91 S.Ct. 950, 28 L.Ed.2d 224 (1971). While our review of the district court's decision not to instruct on the defense is plenary, *United States v. Rodríguez*, 858 F.2d at 812, because it involves an inquiry into the sufficiency of the evidence rather that a differential fact finding, *accord United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986) (cited by *United States v. Rodríguez*, 858 F.2d at 812), upon review we find that the district court did not err in concluding that Pratt failed to sustain his burden.

▮ A defendant is only entitled to a jury instruction on entrapment if:

> there is record evidence which fairly supports the claims of both government inducement of the crime and defendant's lack of predisposition to engage in it ... When all is said and done, however, there must be some hard evidence in the record which, if believed by a rational juror, would suffice to create a reasonable doubt as to whether government actors induced the defendant to perform a criminal act that he was not predisposed to commit. The existence or nonexistence of such a quantum of evidence in a given case is, we think, a matter of law for the court.

*United States v. Rodríguez*, 858 F.2d at 814. *Accord United States v. Jannotti*, 729 F.2d 213, 224 (3d Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). Although the question is admittedly a close one, even viewing the evidence in the light most favorable to appellant, as we

must, we believe that a reasonable juror could not have determined that Pratt was entrapped.

■ In support of his contention that there was sufficient evidence of entrapment to allow the issue to go to the jury, appellant argues several things. First, he argues generally that law enforcement officials instigated the drug transaction, and that he had no intent to purchase a kilogram of cocaine, as evidenced by his bringing only $5,000 to the initial meeting. Second, he contends that Agent Rodríguez enticed him into buying a large quantity of cocaine by attesting to its purity, by lowering the price and by refusing to sell a smaller quantity of cocaine. Third, Pratt argues that his failure to telephone Rodríguez and to appear at a meeting, constitute evidence of unreadiness or lack of predisposition. Finally, appellant avers that the multiple telephone calls made by Rodríguez and Wheeler to him are equatable with impermissible persuasion.

We cannot agree. The facts, taken in context, are simply not susceptible to the gloss which appellant would have us place on them. The evidence showed that, prior to the transaction here at issue, Pratt had dealt in narcotics, thus indicating a predisposition to engage in the purchase and sale of cocaine. *See United States v. Espinal,* 757 F.2d 423, 425 (1st Cir.1985). Not only had he been a drug dealer for some time, but he was knowledgeable about the price and quality of cocaine and the record demonstrates that he was anxious to develop a new source of supply. Additionally, there was uncontradicted testimony that, during the initial meeting between Pratt and Rodríguez, Pratt asked what the price of a kilo was before anyone had even mentioned cocaine. Pratt also queried Rodríquez about the source of the agent's cocaine, averring that it came from his usual source. Moreover, Pratt admitted that the police had recently seized two kilos of 92% pure cocaine from him. At no time did Pratt ever reject the offer to purchase cocaine from Rodríguez.

This is not a case where government agents begged or pleaded with an unwilling target. Indeed, the evidence shows nothing more than that the government created the opportunity for Pratt to become criminally involved. *See United States v. Coady,* 809 F.2d at 122. The fact that Agent Rodríguez put up the pretense of being a drug dealer, and solicited Pratt's business, does not, without more, make the government's involvement rise to the level of entrapment. *United States v. Espinal,* 757 F.2d at 425. Pratt's failure to telephone Rodríguez or to appear at meetings, can as well be attributed to difficulties in raising the purchase money as they can be to reluctance to enter into the transaction. Indeed, as the district court implicitly found, reluctance appears to be an intrinsically improbable conclusion in light of the evidence presented concerning Pratt's predisposition. As this court has held, vague or conclusory statements are not sufficient to raise a genuine issue of material fact. *E.g., United States v. Kakley,* 741 F.2d 1, 4 (1st Cir.), *cert. denied,* 469 U.S. 887, 105 S.Ct. 261, 83 L.Ed.2d 197 (1984). The evidence was sufficient to permit the district court to conclude that, in the end, Pratt became the driving force behind completion of the deal, and thus that he was not entrapped.[5] Since the evidence did not support Pratt's contention that he was "lured or exploited," the district court did not err in failing to instruct the jury on the entrapment defense.

### B. *Exclusion of Testimony*

■ Appellant next argues that the district court erred in excluding testimony, which, he argues, relates to his alleged susceptibility to entrapment. Pratt contends that testimony should have been permitted with regard to his subnormal intelligence, mental deficiencies, impulsivity, and his cocaine and alcohol dependency. This evidence was, he asserts, highly probative with regard to his entrapment theory.

---

5. Appellant also makes an argument that, at the time of the transaction, he was gainfully employed, and that his employment status alone constitutes more than the "mere scintilla" of evidence which was needed to get the issue to the jury. We find this argument peccant.

We need not address this point on the merits. If relevant at all—and we do not suggest that that was the case—the evidence bore only on lack of predisposition. But, a defendant's entry-level burden has two prongs. *See supra* pp. 987–988 and cases cited. Inasmuch as there was insufficient evidence on the first prong (inducement) to take entrapment to the jury, *see supra* Part III(A), any error in admitting "lack of predisposition evidence" was harmless. *See United States v. Polito*, 856 F.2d at 417 n. 3. failure to prove inducement renders "the state of the record" on predisposition "virtually academic"). At any rate, even if the evidence is viewed as relating to the inducement prong, we cannot say that the court below abused its broad discretion in excluding the proffer. *See United States v. McKenna*, 889 F.2d at 1175.

## IV. FAILURE TO ORDER GOVERNMENT INFORMANT TO TESTIFY

The government informant, Walter Wheeler, was summonsed as a witness by Pratt, but upon the advice of counsel, refused to answer questions on the ground that his answers might incriminate him. This Fifth Amendment privilege was asserted on the basis of the state charges for which he had originally sought leniency through cooperation. Appellant contends that the privilege should not have been sustained by the district court, primarily because no particularized inquiry of Wheeler was made regarding his blanket assertion of the Fifth Amendment privilege. He contends that excusing Wheeler from testifying rose to the level of a constitutional violation, because his rights to confrontation and compulsory process were denied when he was precluded from questioning the most important government witness. Wheeler's testimony, he avers, was both material and relevant to his only defense: entrapment. Finally, Pratt argues that, instead of excusing Wheeler from testifying, the district court should have granted Wheeler immunity, and that it was error for it to have refused to do so.

The privilege granted by the Fifth Amendment is indeed quite broad, and may be asserted in the face of the possibility of state prosecution. *Malloy v. Hogan*, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964); *In re Brogna*, 589 F.2d 24, 27 (1st Cir.1978). Anyone claiming the privilege, however, must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344, *reh'g denied*, 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951). *See also United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980); *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). This is a determination for the court, not the witness, to make, *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and is subject to the discretion of the district court. *Id.* The exercise of this discretion, however, ordinarily requires that a particularized inquiry into the reasons for the assertion of the privilege be made. *See United States v. Pierce*, 561 F.2d 735, 741 (9th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978); *North River Ins. Co. v. Stefanou*, 831 F.2d 484, 487 (4th Cir.1987), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988). But this is only a general rule. In this case, we find that the district court did not abuse its discretion in determining that Wheeler had a valid Fifth Amendment claim.

At the time of Pratt's trial, a motion was pending to dismiss Wheeler's state criminal charge. This motion was based on allegations of prosecutorial misconduct by state authorities during Wheeler's cooperation in the Pratt investigation. Wheeler's cooperation was the same topic upon which Pratt's attorney sought to examine him at trial. Given these facts, this court is unable to conclude that the district court erred in allowing Wheeler's Fifth Amendment assertion to stand.

Nor do we find merit in Pratt's argument that the district court erred in denying his request to grant Wheeler im-

munity in the face of his asserted claim of the Fifth Amendment privilege. A defendant has no general right to obtain, and a district court has no general power to grant, immunity for defense witnesses. Instead, the power to apply for immunity rests solely with the government. *United States v. Davis*, 623 F.2d 188 (1st Cir.1980). In the face of the government's refusal to seek immunity for Wheeler, the district court did not err in denying immunization to Wheeler, and thus excusing him from testifying.

Although there may be certain circumstances under which due process requires defense witnesses to be immunized, *see, e.g., United States v. Alessio*, 528 F.2d 1079 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184, *reh'g denied*, 429 U.S. 873, 97 S.Ct. 193, 50 L.Ed.2d 156 (1976), the facts in this case do not suggest that an exception to the general rule was warranted. *See United States v. Angiulo*, 897 F.2d 1169, 1190–93 (1st Cir. 1990). In that case, we recognized two theories under which defendants are entitled to a grant of immunity for prospective witnesses. Under the "effective defense theory," a court has power to immunize witnesses whose testimony is essential to an effective defense. Similarly, under the "prosecutorial misconduct theory," courts have authority to require the government to grant immunity to witnesses if the government has deliberately attempted to distort the fact-finding process. *See also United States v. Morrison*, 535 F.2d 223, 229 (3d Cir.1976); *Government of Virgin Islands v. Smith*, 615 F.2d 964, 969 (3d Cir.1980). In this case, however, it is clear that Wheeler's testimony was not essential to an effective defense. The transcript of Wheeler's interview with the CPAC Unit on January 3, 1989 revealed only facts which tended to inculpate Pratt. The fact that, as appellant argues, Wheeler may have been used to encourage Pratt to buy cocaine, and that Wheeler participated in recorded conversations which were then played to the jury, does not suggest a defense. Nor is there evidence of any type of prosecutorial misconduct impinging upon the fact-finding process. Thus, we find no error in

the district court's refusal to grant Wheeler immunity from prosecution.

## V. DENIAL OF MOTION FOR ACQUITTAL ON THE CONSPIRACY CHARGE

■ Appellant moved for judgment of acquittal on the conspiracy charge at the close of the government's case, at the close of all the evidence and after the guilty verdict was returned. The motions were consistently denied. On appeal, Pratt argues the evidence was insufficient to support a guilty verdict for several reasons. First, he contends that a person cannot conspire with himself, and thus that the government must prove that there were at least two persons involved in the conspiracy. *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), *overruled on other grounds, Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The indictment alleged that Pratt conspired with the co-defendant, the driver of his car, to commit the underlying offense. Although the indictment also alleged that Pratt conspired with persons unknown, no evidence was presented of the existence of the unknown persons or of a conspiracy with them. Thus, appellant argues that, for the conspiracy conviction to be sustained, the government must have proved that Pratt conspired with the co-defendant. This, he argues, the government failed to do. According to his analysis, the only evidence of the co-defendant's participation in the venture was his "mere presence" at the scene of the alleged crime, and "mere presence" is not enough to support a conspiracy claim. *United States v. Smith*, 680 F.2d 255 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). Pratt contends that the co-defendant did nothing more than to drive him to the meeting place.

But Pratt's argument has a fatal flaw. It is well settled that a conspiratorial agreement may be proven by circumstantial as well as direct evidence. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *reh'g denied, Kretske v. United States*, 315 U.S. 827, 62 S.Ct. 629,

86 L.Ed. 1222 (1942). Such evidence existed here. From the evidence presented, the jury could reasonably have found that Pratt conspired with (1) the named co-defendant (2) his unnamed "partner" and (3) Pratt's wife. First, the evidence showed that Pratt and the co-defendant had known each other for ten years, and when, at their initial meeting, Rodríguez asked Pratt who the co-defendant was, Pratt responded, "He's been with me for a long time." Second, when Pratt failed to appear at the next meeting, Rodríguez placed many phone calls to Pratt in an effort to close the deal, and five of those calls were placed to a number supplied by Pratt: the co-defendant's number. It was also reasonable for the jury to infer from the co-defendant's statements on the phone that he had knowledge of the contemplated transaction. Third, at the final meeting, Rodríguez entered the vehicle that the co-defendant had driven, and began to count the $12,500 in his presence. When Agent Rodríguez inquired about the co-defendant's identity, Pratt, referring to the co-defendant, and in the co-defendant's presence, said, "He is my runner. He deals for me." Viewed in the light most favorable to the government, the evidence is sufficient to permit a jury to reasonably conclude that the co-defendant was a knowing participant in the conspiracy.

Even if, however, the evidence was not sufficient to prove a conspiracy with the co-defendant, there was evidence from which a jury could conclude that Pratt conspired with either of two unnamed co-conspirators. When Pratt had difficulty coming up with the purchase price, he proposed that Rodríguez accept $6,000 and the title to his partner's Camaro, although the vehicle was never produced. From this, the jury could have inferred that Pratt conspired with this "partner." A similar conclusion was reasonable in light of the evidence implicating Pratt's wife as a knowing co-conspirator. Rodríguez had four conversations with her when he called the co-conspirator's residence, and she assisted him in locating Pratt. While this evidence is, without question, circumstantial, under the circumstances of this case, it is sufficient to sustain a conviction for conspiracy.

## VI. DENIAL OF MOTION FOR NEW TRIAL

Appellant's next argument is that rule of consistency requires the entry of a judgment of acquittal because the jury was unable to reach a unanimous verdict as to the co-defendant, and that the district court erred by failing to do so. He contends that the rule of consistency requires that, when all possible co-conspirators are tried jointly, an acquittal of one of two conspirators operates as an acquittal of the other. *See United States v. Bosch Morales*, 677 F.2d 1 (1st Cir.1982), *overruled, United States v. Bucuvalas*, 909 F.2d 593, 594, 597 (1st Cir. 1990).

The rule of consistent verdicts does not, however, apply where, as here, the jury has reached a guilty verdict on one defendant, but cannot arrive at a unanimous decision as to the only possible co-conspirator. *United States v. Bucuvalas*, at 597. Moreover, we note that the rule of consistency is an exception, observed by only a limited number of courts, to the general rule that inconsistency in a verdict is not a sufficient reason for setting it aside. *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), *overruled on other grounds, Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), as stated in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Even before we overruled *United States v. Bosch Morales*, 677 F.2d 1, in *Bucuvalas, supra*, the rule of consistency only mandated acquittal of co-defendants tried together in a conspiracy case where the jury acquitted all possible co-conspirators save one. In this case, however, the rule of consistency would not apply because none of Pratt's possible co-conspirators were acquitted. Mrs. Pratt and the partner were never charged, and thus could not have been acquitted. As to the only named co-defendant, the jury failed to reach a unanimous verdict, and a mistrial was declared. This is not the equivalent of an acquittal. *See United States v. Sangmeister*, 685 F.2d 1124, 1127 (9th Cir.1982); *United States v. Becton*, 632 F.2d 1294 (5th Cir.1980), *cert. denied*, 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117

(1981) (hung jury may reflect independence of jury rather than insufficient evidence). *Cf. United States v. Shipp*, 359 F.2d 185 (6th Cir.), *cert. denied*, 385 U.S. 903, 87 S.Ct. 213, 17 L.Ed.2d 134 (1966) (jury's failure to reach a verdict is a non-event). Thus, the district court did not err in failing to grant Pratt's motion for a new trial and for a judgment of acquittal on the conspiracy charge.

## VII. PROPRIETY OF DEFENDANT'S SENTENCE

■■■ Appellant next contends that the district court's imposition of a 21 year sentence, enhanced under the career offender provision of the sentencing guidelines, was clearly erroneous. Under the sentencing guidelines, a career offender is defined as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense is a crime of violence or trafficking in a controlled substance, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Pratt argues that he was not a career offender, because, although he did have two prior convictions for assault and battery on a police officer, these were *state* misdemeanors rather than the violent felonies contemplated by the sentencing guidelines. Appellant contends that, although his prior convictions fall within the Sentencing Guideline Commentary's definition of a felony conviction because they carry more than a one-year maximum sentence, the crimes listed in the Commentary are all serious felonies which contemplate the infliction or threat of infliction of serious bodily harm. The simple assaults for which he was convicted, he argues, are not such crimes.

We do not agree. A crime of violence is defined in 18 U.S.C. § 16 as:

> (a) an offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the course of committing the offense.

Pratt's pre-sentence report lists eighteen separate convictions or juvenile adjudications, and three of these convictions qualify as "crimes of violence." The fact that simple assault and assault on a police officer are not listed as examples of crimes of violence in the Guidelines' Commentary is not significant in light of our finding that the Commentary is not meant to be an exhaustive list of all offenses qualifying as violent. The district court, having properly concluded that appellant qualified as a career offender, imposed a sentence within the applicable Guidelines range, and committed no error in doing so.

## VIII. CONCLUSION

For the reasons detailed above, we affirm the decision of the district court in all respects.

*Affirmed.*