**UNITED STATES of America, Appellee,**

v.

**Dianne SUTHERLAND,
Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Alan W. FINI, Defendant, Appellant.**

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1991.

Decided March 26, 1991.

Wendy Sibbison, Greenfield, Mass., for defendant, appellant Dianne Sutherland.

William C. Newman, with whom Lesser, Newman, Souweine & Nasser, Northampton, Mass., was on brief, for defendant, appellant Alan W. Fini.

C. Jeffrey Kinder, Asst. U.S. Atty., Wilbraham, Mass., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., and Kevin J. Cloherty, Sp. Atty., U.S. Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before BREYER, Chief Judge, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

A jury convicted Dianne Sutherland of one count of conspiracy to distribute cocaine and marijuana, and Alan Fini of three counts of distributing cocaine, one count of distributing marijuana, two counts of tax evasion, and the conspiracy count. Both appellants raise a myriad of issues as grounds for reversal of their convictions. Although worthy of discussion, we find that these appeals are ultimately without merit, and we affirm the convictions.

I.

BACKGROUND

The history of this case begins in the courts of the Commonwealth of Massachusetts. On July 18, 1986, Fini, Sutherland, and others were charged in Hampden County, Massachusetts Superior Court with several narcotics offenses, including

trafficking in cocaine and unlawful distribution of marijuana. The indictments were the fruits of a lengthy investigation conducted primarily by state law enforcement officers, with some participation by federal agents from the Internal Revenue Service (IRS) and the Drug Enforcement Administration (DEA). The investigation produced a number of incriminating tape recordings of conversations between the defendants and an informant, Gary Forish.

■ Under Massachusetts law, warrantless interception of oral and wire communications is prohibited absent consent of all the parties, except in two circumstances which do not apply here. Mass.Gen.L. ch. 272, § 99. The Massachusetts Supreme Judicial Court has held that, although not a violation of the federal Constitution, warrantless surveillance violates the right to privacy protected by the Massachusetts Declaration of Rights, Art. 14. *Commonwealth v. Blood*, 400 Mass. 61, 68–71, 507 N.E.2d 1029, 1032–35 (1987). For this reason, tape recordings obtained in violation of ch. 272, § 99, and testimony derived therefrom, cannot be used as substantive evidence in Massachusetts prosecutions. *Id.* at 77, 507 N.E.2d at 1038.

In the prosecution of Alan Fini, the Commonwealth conceded that the recordings were inadmissible in its case-in-chief. Before trial, however, the Commonwealth moved in limine for a determination that it would be allowed to use the tapes as impeachment evidence should Fini testify. The question was reported directly to the Supreme Judicial Court, which held that "the Commonwealth may not use the recorded conversations for impeachment purposes irrespective of whether the conversations dealt with collateral matters or directly with the crimes charged." *Commonwealth v. Fini*, 403 Mass. 567, 573, 531 N.E.2d 570, 574 (1988). Apparently this ruling made the prosecution less attractive: On September 5, 1989, the case was dismissed upon motion of the Commonwealth.

On November 1, 1989, a federal grand jury returned an indictment against Sutherland, Fini, and a third defendant who was subsequently acquitted at trial. During the pre-trial phase, Sutherland moved to sever the tax counts against Fini from the rest of the case. Fini, joined by Sutherland, moved to suppress the tape recorded conversations on the theory that admitting the tapes in federal court, after they had been declared inadmissible in Massachusetts, violated due process. These motions were denied and the case proceeded to trial, resulting in the convictions appealed from here.

Sutherland and Fini raise several issues together, and each appellant also raises individual claims of error. We shall first address the common issues before proceeding to the individual arguments. Facts will be brought in as appropriate.

## II.

## DISCUSSION

A. *Admissibility of the tape recordings.*

■ Appellants contend that the tape recordings should have been suppressed because they were obtained by state law enforcement personnel in violation of Massachusetts law. We begin with the proposition that federal law governs federal prosecutions in federal court. *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *see also United ed States v. Little*, 753 F.2d 1420, 1434 (9th Cir.1984) ("Evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law.*") (emphasis in original). This court has consistently adhered to this rule. *See United States v. Santana*, 895 F.2d 850, 853 (1st Cir.1990); *United States v. Mitro*, 880 F.2d 1480, 1485 n. 7 (1st Cir.1989); *United States v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir.1989), *cert. denied sub nom. Latraverse v. United States*, —— U.S. ——, 110 S.Ct. 236, 107 L.Ed.2d 187 (1990); *United States v. Jorge*, 865 F.2d 6, 10 n. 2 (1st Cir.), *cert. denied*, 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989); *United States v. Quiñones*, 758 F.2d 40, 43 (1st Cir.1985). As the parties agree that the requirements of the federal wiretap statute, 18 U.S.C. § 2510 *et seq.*, were met in

this case, appellants have a steep uphill climb to convince us to disregard this basic rule.

To support their position appellants point to our decisions in *United States v. Pratt*, 913 F.2d 982 (1st Cir.1990), *cert. denied*, ⎯ U.S. ⎯, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991), and *United States v. Jarabek*, 726 F.2d 889 (1st Cir.1984). These cases suggest the following possible exception to the general rule: If state law enforcement officers, acting without federal involvement and in knowing violation of state law, gather evidence which is inadmissible in state court but admissible in federal court, the federal court should not condone the use of such evidence because to do so would permit federal officials to "allow[ ] illegally seized evidence to be handed them on a 'silver platter.'" *Pratt*, 913 F.2d at 986 (quoting *United States v. Aiudi*, 835 F.2d 943, 946 (1st Cir.1987), *cert. denied*, 485 U.S. 978, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988)); *see also Jarabek*, 726 F.2d at 900 n. 10.

■ In this case, appellants claim that the investigation culminating in their arrest was primarily a state affair. A state police officer headed the investigation, and state police conducted the briefings, the surveillance, and the tape recordings. Appellants characterize federal involvement in the case as minimal. Therefore, they maintain that the more restrictive state law should govern.

■ We reject appellants' argument on both a factual and a legal basis. As to the facts, although it is clear from the record that the state played a leading role in the investigation, it was far from a one-man show. The DEA provided funds to the informant for the purchase of drugs on at least two occasions. The original tape recordings were turned over to the DEA for duplication and safekeeping. DEA officers were involved at various times. United States Marshals seized automobiles belonging to Fini, under authority of DEA forfeiture laws. The IRS conducted a parallel

investigation during the pendency of the state effort. Indeed, this latter fact brings the case very close to *Aiudi*, where we held that the existence of independent state and federal investigations justified the use of the state-gathered evidence in a federal proceeding, because the federal officer had authority to do lawfully exactly what the state officers had done unlawfully. *Aiudi*, 835 F.2d at 946. We could conclude simply that because the investigation in this case was not *purely* a state creature, it falls within the general rule that "the admissibility of evidence obtained during a joint federal-state investigation for use in a federal criminal trial is governed by federal law." *Pratt*, 913 F.2d at 987 (citing *Jarabek*, 726 F.2d at 900).[1] This rule applies even where, as here, the state initially sought to use the evidence in a state prosecution. *See Jarabek*, 726 F.2d at 896–97. Thus, we could limit our holding to the narrow facts of this case; however, we choose to go further.

■ More fundamentally and more broadly, we wish to curb speculation as to a "silver platter" exception stemming from our dicta in *Pratt* and *Jarabek*. In our view, the language in note 10 of *Jarabek* implies only that in an extreme case of flagrant abuse of the law by state officials, where federal officials seek to capitalize on that abuse, this court might choose to exercise its supervisory powers by excluding ill-gotten evidence. This pronouncement is not ground-breaking; it merely traces the contours of a well-established power inherent in the federal courts. *See Elkins*, 364 U.S. at 216, 80 S.Ct. at 1443–44. It certainly does not delineate an exception to the general rule that federal law governs in federal prosecutions. None of our cases has actually found circumstances supporting an exception, nor have other courts reached this result. *See Jarabek*, 726 F.2d at 900 ("We have found no federal case that has relied on state law in judging the admissibility of evidence of intercepted communications in any circumstances other

---

1. The Massachusetts wiretap statute itself exempts federal law enforcement officers from its provisions provided that they are "acting pursuant to authority of the laws of the United States and within the scope of their authority." Mass. Gen.L. ch. 272, § 99(D)(1)(c).

than where the electronic surveillance was conducted pursuant to a state warrant or order."). We write here to clarify that, in this circuit, there is no such exception. We prefer this approach to forcing courts into intricate analytical maneuvers to escape a poorly conceived exception.

The Second Circuit has travelled a similar path in rejecting a "silver platter" exception. That court intimated, in *United States v. Sotomayor*, 592 F.2d 1219, 1225 (2d Cir.), *cert. denied sub nom. Crespo v. United States*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), that such an exception might exist. Application of the supposed exception in *Sotomayor* was negated by the court's characterization of the state law at issue as merely procedural rather than affecting a fundamental right. *Id.* at 1225–26. In later cases the Second Circuit, and the district courts within that circuit, consistently refused to apply an exception, either because of the procedural/fundamental distinction, or because of a finding that both federal and state officers had participated in the investigation. *See, e.g., United States v. Spadaccino*, 800 F.2d 292, 296–97 (2d Cir.1986); *United States v. Aiello*, 771 F.2d 621, 627 (2d Cir.1985); *United States v. Lilla*, 699 F.2d 99, 102 n. 3 (2d Cir.1983); *United States v. Regan*, 706 F.Supp. 1102, 1108 (S.D.N.Y.1989); *United States v. Eyerman*, 660 F.Supp. 775, 780 (S.D.N.Y.1987), *appeal dismissed*, 857 F.2d 1462 (2d Cir.1987).

A different and much broader rationale supported the decision of the Second Circuit in *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987), where the issue was one of state constitutional law and the investigation was entirely under the auspices of the state police. There the court allowed the evidence in a federal prosecution, stating that this result did not create any potential for abuse:

> A state prosecutor whose case relies on evidence that may be inadmissible in a state court trial has no power or authority to effect a prosecution in federal court. The initiation of a federal prosecution depends entirely on the discretion of the federal prosecutor.

*Id.* at 204. Following *Pforzheimer*, the District Court for the Southern District of New York has concluded that "[i]t is therefore unclear whether the Second Circuit still recognizes the *Sotomayor* rule." *Regan*, 706 F.Supp. at 1108. It does indeed appear that the Second Circuit has narrowed its rather expansive dicta in *Sotomayor*, as we now clarify our comments in *Jarabek* and *Pratt*.

█ In sum, we hold that in federal criminal prosecutions, the admissibility of wiretap evidence is a question of federal law.

As a second volley, appellants attempt to invoke the principle of collateral estoppel to bind the federal court to the decision of the Massachusetts Supreme Judicial Court in *Commonwealth v. Fini*, 403 Mass. 567, 531 N.E.2d 570 (1988). In this circuit it is well established that a ruling in a state prosecution will collaterally estop the federal government only if federal authorities substantially controlled the state action or were virtually represented by the state court prosecutor. *United States v. Land at 5 Bell Rock Road, Freetown, Mass.*, 896 F.2d 605, 610 (1st Cir.1990); *United States v. Bonilla Romero*, 836 F.2d 39, 43 (1st Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). "Otherwise, a federal court is free to make its own determination." *Land at 5 Bell Rock Road*, 896 F.2d at 610.

█ Fini and Sutherland cite *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), in support of their claim that the federal government should be precluded from relitigating the issue of the admissibility of the tapes. *Montana*, however, differs from this case in several respects. There, the federal government, although not a party, assumed control over the earlier state litigation by requiring the lawsuit to be filed, reviewing and approving the complaint, paying attorneys' fees and costs, directing the appeal, and submitting an amicus brief to the state supreme court. *Id.* at 155, 99 S.Ct. at 974–75. Based on those facts the Supreme Court found that "although not a party, the United States plainly had a sufficient 'la-

boring oar' in the conduct of state-court litigation to actuate principles of estoppel." *Id.* By contrast, in this case there is no evidence that the federal prosecutors played any role or had any direct influence in the state court suppression hearing. The federal government was not a party, nor in privity with a party, and collateral estoppel is therefore inapplicable.[2]

### B. *Sufficiency of the evidence.*

Count I of the indictment charged both Fini and Sutherland with conspiring to "distribute and possess with intent to distribute, a Schedule I Controlled Substance, namely marijuana, and a Schedule II Controlled Substance, namely, cocaine." The conspiracy charge was the only count against Sutherland. Most of the evidence at trial focused on cocaine, and neither appellant challenges the sufficiency of the evidence with regard to cocaine. Appellants do argue, however, that there was insufficient evidence to convict them for a *marijuana* conspiracy. As the indictment charged a single conspiracy to distribute both drugs, appellants maintain that insufficient evidence as to one of the drugs mandates acquittal on the entire count.

The issue here is the recurring problem of single/multiple conspiracy. *See Berger v. United States*, 295 U.S. 78, 81, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). The indictment charged a single conspiracy to distribute "marijuana and cocaine," but the proof at trial arguably demonstrated that there may have been two conspiracies—one to distribute marijuana and one to distribute cocaine—or, as appellants contend, that there was no conspiracy to distribute marijuana at all. Appellants claim that a variance analysis, which focuses on discrepancies between indictment and proof, is inappropriate here, because the government waived its right to a variance analysis in failing to object to the charge as it went to the jury. We are not persuaded, and find

instead that this case is controlled by our decision in *United States v. Glenn*, 828 F.2d 855 (1st Cir.1987).

In *Glenn*, two defendants were convicted of conspiracy to import and possess marijuana and hashish, and actual possession of marijuana. This court found that the evidence proved not one but two separate conspiracies. One defendant, Glenn, had participated in the hashish conspiracy, and the other defendant, Benavides, had participated in the marijuana conspiracy, but neither defendant had conspired to import and possess both drugs. Only Glenn's conviction required reversal, however, because only he suffered significant prejudice from the variance. This prejudice stemmed from the judge's instruction to the jury that, if it found Glenn guilty of the conspiracy, it could also find him guilty of the substantive charges relating to the marijuana even though there was no evidence tying Glenn to the import or possession of marijuana.

*Glenn* provides the outline for our approach in variance cases:

(1) Is the evidence sufficient to permit a jury to find the (express or tacit) agreement that the indictment charges? (2) If not, is it sufficient to permit a jury, under a proper set of instructions, to convict the defendant of a related, similar conspiracy? (3) If so, does the variance affect the defendant's substantial rights or does the difference between the charged conspiracy and the conspiracy proved amount to "harmless error?"

*Glenn*, 828 F.2d at 858; *see also Berger*, 295 U.S. at 82, 55 S.Ct. at 630 ("The true inquiry ... is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused."). In *Berger*, the Court noted two ways in which a defendant may be substantially prejudiced by a variance. He may receive inadequate notice of the charges against him and thus be taken by surprise at trial, or he may be

---

**2.** We similarly find that the record is devoid of any evidence that the federal prosecution was vindictive. Fini's conclusory allegation does not suffice to meet his burden. *See United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *United States v. Bassford*, 812 F.2d 16, 20 (1st Cir.), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987). Fini's allegation of bad faith forum shopping fares no better.

twice subject to prosecution for the same offense. *Berger,* 295 U.S. at 82, 55 S.Ct. at 630–31. This court has identified a third type of harm known as "spillover": "the transference of guilt to an individual defendant involved in one conspiracy from evidence incriminating defendants in a conspiracy in which the particular defendant was not involved." *United States v. Thomas,* 895 F.2d 51, 56 and n. 7 (1st Cir.1990) (quoting *United States v. Levine,* 569 F.2d 1175, 1177 (1st Cir.), *cert. denied,* 436 U.S. 928, 98 S.Ct. 2824, 56 L.Ed.2d 771 (1978)); *see also United States v. Drougas,* 748 F.2d 8, 18 (1st Cir.1984); *United States v. Flaherty,* 668 F.2d 566, 580 (1st Cir. 1981). "Spillover" prejudice is a particular risk in a case such as this one, where considerably more evidence is presented against one defendant than against the others.

Applying the *Glenn* analysis to the present circumstances, we conclude that neither Sutherland nor Fini's conviction requires reversal. As to Fini, we need not go beyond the first step of the inquiry. The evidence, consisting of the testimony of informant Gary Forish, was sufficient to permit the jury to convict Fini of the conspiracy as charged. Forish testified that he had purchased marijuana from Fini on a number of occasions, albeit "not very often" in comparison to the number of cocaine purchases. When Forish was arrested prior to turning informant, a bag of marijuana was found in his possession. He testified at trial that he had bought the bag of marijuana from Fini for $900 on credit, which was the "normal" way he and Fini did business. Forish explained that he and Fini had an "understanding" that the next time Forish picked up a "product" he was to "pay off as much of the balance as possible." When queried as to the meaning of "product," Forish stated that it meant cocaine or marijuana. Forish also testified that he had intended to resell the bag of marijuana for profit. Leaving the credibility determination to the jury, as we must, we find that the evidence of marijuana transactions, taken with the ample evidence as to cocaine, was sufficient to convict Fini of conspiracy to distribute both drugs.

Sutherland's situation requires somewhat more analysis. Only one piece of Forish's testimony connected her with the marijuana conspiracy. Forish stated that she had been present when he purchased from Fini the marijuana later found in his possession. It is, of course, axiomatic that standing alone, neither "mere presence" nor a "single isolated act" can establish the existence of a conspiracy. *See, e.g., United States v. Aponte–Suárez,* 905 F.2d 483, 491 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 531, 112 L.Ed.2d 541 (1990); *United States v. DeLutis,* 722 F.2d 902, 905 (1st Cir.1983). Based on this sole piece of evidence, therefore, a conviction for cocaine and marijuana conspiracy could not stand.

The second *Glenn* step asks if the defendant could have been convicted of a related similar conspiracy to that charged. Here the answer is clearly affirmative. The government introduced substantial evidence, in the form of live testimony and tape recordings, that Sutherland was a participant with Fini in the conspiracy to distribute cocaine. The evidence showed, for example, that Sutherland had purchased a case of an agent used to dilute cocaine; that the responsibility for "cutting" the cocaine was hers; and that she had, on more than one occasion, accepted money from cocaine purchasers when Fini was unavailable. There is no doubt that sufficient evidence was introduced to convict Sutherland for a cocaine conspiracy, and indeed, she does not seriously contend otherwise.

That conclusion brings us to the final prong of the variance analysis: Did the variance between offense charged and proved affect the substantial rights of the accused? We find that it did not. Sutherland had notice of the nature of the charge, and there is no danger of a repeat prosecution for the same offense. There was no prejudicial spillover from the marijuana evidence, which was minor compared with the abundant evidence regarding cocaine. We also note that the district court instructed

the jury in unmistakable terms that it must consider the evidence against each defendant separately. Sutherland was not subjected to an increased penalty as a result of the variance. Accordingly, the variance in this case amounted only to harmless error.

## C. *Ineffective assistance of counsel.*

Sutherland and Fini each point to the conduct of their respective trial attorneys as ground for a new trial. Our reading of the record leads us to conclude that, at the least, these allegations are not meritless. Nevertheless, we decline to address the issue because it was not raised below by either appellant, whether during trial or in a post-trial motion. Determining the existence of ineffective assistance generally requires an "independent factual inquiry into the merits of the claim." *United States v. Caggiano*, 899 F.2d 99, 100 (1st Cir.), *abrogated on other grounds, Horton v. California*, — U.S. —, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The proper route for such claims is through a collateral proceeding in district court pursuant to 28 U.S.C. § 2255 so proper factual determinations can be made." *Id.; see also United States v. Rodríguez–Cardona*, 924 F.2d 1148, 1159 (1st Cir.1991).

We have considered appellants' suggestion that the alleged ineffective assistance in this case is so apparent from the record that the normal and preferred procedure is unnecessary, *see Caggiano*, 899 F.2d at 100, but we disagree. It is true that the record manifests a possible conflict of interest on the part of Sutherland's attorney,[3] and a questionable trial strategy used by Fini's counsel. Nevertheless, it also appears that Sutherland may have waived the conflict of interest, *see United States v. Fahey*, 769 F.2d 829, 834–35 (1st Cir.1985), and it is certainly apparent that the evidence against Fini was so substantial that an unusual defense strategy may have been appropriate.

Moreover, the evidence against both appellants may have been sufficient to overcome the harm of poor performance by counsel. In Sutherland's case, "when 'a

defendant has voluntarily chosen to proceed' with a potential conflict 'it is fair, if [s]he later alleges ineffective assistance growing out of a conflict, to require that [s]he demonstrate that a conflict of interest actually affected the adequacy of representation.'" *Fahey*, 769 F.2d at 835 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 353, 100 S.Ct. 1708, 1720, 64 L.Ed.2d 333 (1980) (Brennan, J., concurring)). As to Fini, a defendant alleging ineffective assistance must show not only that counsel was deficient but also that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This court is simply not situated to make a trustworthy judgment on this issue, and we decline to attempt to do so.

## D. *Court's comment on defendants' right not to present evidence.*

After the government rested, the judge told the jury:

> After the Government rests its case in a criminal case, the Defendants have an option. They have a constitutional right to rest without offering any evidence, resting on the burden the Government has to prove its case beyond a reasonable doubt. Or they may go forward and offer evidence.

The judge then asked counsel for each defendant, in turn, "Do you wish to offer any evidence?" and each replied in the negative.

Both appellants now contend that this comment unnecessarily emphasized their decision not to offer evidence. It appears to us, however, that the court's comment was an entirely accurate statement of law and was neutral with regard to the decision not to present a defense. There was no error.

## E. *Improper comments on Fini's silence.*

Fini wages a two-part attack against what he contends was improper comment on his failure to testify; Suther-

---

**3.** For the facts supporting the conflict of interest charge, see pages 776–777, *infra*.

land joins this part of the appeal because of what she terms its "prejudicial spillover effect" on her. First, the government's summary witness in the tax case against Fini, Gilbert George, testified that "based on the only discussion I have heard of possible sources of other income has been from drug activities." According to appellants, this comment, taken together with George's earlier statement that the IRS sometimes determines the amount of "cash on hand" simply by asking the individuals involved, amounted to unfair comment on Fini's silence. We conclude that this inference is extremely thin. George simply testified to what he had heard in the courtroom and at no time suggested that Fini was under any obligation to provide information either before or during trial.

■ Of greater concern is the suggestion that the prosecutor erred when, at the beginning of his closing argument, he stated:

> When you go into the jury room, you can rely on your collective memory, and you also have a chance to observe the physical exhibits. Take a look at the marijuana purchased by Gary Forish from Alan Fini; three satchels of cocaine that were purchased by Gary Forish from Alan Fini.
>
> You get a chance to look at all the documents, and there are a number of them in this case. Those documents in large part verify the fact that Alan Fini made a lot of purchases that he couldn't explain.

The prosecution conceded in its brief and at oral argument that the last four words were ill-advised in light of previous decisions by this court. *See United States v. Skandier*, 758 F.2d 43, 45 (1st Cir.1985); *United States v. Cox*, 752 F.2d 741, 745 (1st Cir.1985). In *Cox*, we sketched the analysis appropriate in situations of possible prosecutorial misconduct:

> In deciding whether a new trial is required—either because prosecutorial misconduct likely affected a trial's outcome or to deter such misconduct in the future—we consider "the severity of the misconduct, whether it was deliberate or

accidental, the likely effect of the curative instruction, and the strength of the evidence against the appellants."

*Cox*, 752 F.2d at 745 (quoting *United States v. Capone*, 683 F.2d 582, 586 (1st Cir.1982)).

We characterize the severity of the misconduct here as minimal. Apparently Fini's attorney did not find it so severe as to merit an objection. In the context of the closing argument, moreover, the prosecutor was attempting to imply that Fini's reported income was insufficient to cover the expensive purchases he had made; and in the context of tax investigations, authorities often inquire of a taxpayer about sources of income. Given all these circumstances, we do not believe that the intent of the prosecutor was to draw attention to Fini's failure to testify at trial. These facts also lead us to conclude that the statement was inadvertent rather than deliberate. Although the trial judge did not deliver an immediate curative instruction (none was requested by the defense), he did properly instruct the jury that the defendants were under no obligation to call any witnesses or produce any evidence. Finally, the evidence against Fini especially, and Sutherland as well, was substantial. Therefore, although the prosecutor's comment was improper, it was harmless and does not warrant a new trial.

F. *Improper vouching by the prosecutor.*

■ In his opening statement, the prosecutor said that Gary Forish:

> will tell you that by testifying for the Government in this case, he hopes to get a break from the State Courts. So he will be honest with you and he will explain to you that he has every incentive to cooperate with the Government in his testimony in this case.

On appeal, Fini and Sutherland assert that the prosecutor's remark amounted to improper vouching for the credibility of the government's witness. We disagree. The prosecutor did not put the prestige of the government behind the witness or indicate that extrinsic evidence supported the witness. *See United States v. Martin*, 815

F.2d 818, 823 (1st Cir.), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987); *compare United States v. Simtob,* 901 F.2d 799, 805 (9th Cir.1990). It appears from the context of the remark that the prosecutor simply pointed out that Forish would disclose the terms of his plea agreement. Informing the jury of the existence of a plea agreement is not error. *Martin,* 815 F.2d at 821. And the phrase "he will be honest with you," while literally constituting vouching, "was the sort of borderline lapse which, at most, amounted to harmless error." *Id.* at 823.

### G. *Failure to make Petrozziello rulings.*

 Appellants suggest that the trial court erred in failing to make rulings required by *United States v. Petrozziello,* 548 F.2d 20 (1st Cir.1977). *Petrozziello* states that at the close of evidence a trial court should make a finding regarding the existence of a conspiracy and the admissibility of contested coconspirator hearsay statements. *Petrozziello,* 548 F.2d at 23; *see also United States v. Ciampaglia,* 628 F.2d 632, 637–38 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 and 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980).

There was no need for the court to make a *Petrozziello* finding in this case, and none was requested by the defense, because none of the defendants challenged the admissibility of coconspirator hearsay. In a similar situation this court stated: "Without a proper objection to the statements introduced by the government, the court is not required to follow the *Ciampaglia* procedure or make a *Petrozziello* finding." *United States v. Machor,* 879 F.2d 945, 950 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1138, 107 L.Ed.2d 1043 and — U.S. —, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990) (citations omitted). Accordingly, the trial court had no obligation to make a *Petrozziello* finding.

### H. *Right to confrontation and exculpatory evidence.*

Fini makes a several-pronged attack on the conduct of the government and the court below. He claims that the government failed to disclose Forish's testimony before a 1983 federal grand jury. Further, he alleges that the trial court improperly precluded cross-examination of government witnesses Gary Forish and Peter Gerard. Finally, he contends that the court erred in preventing the defense from calling DEA Special Agent Edward O'Brien to impeach Forish. As a result of these alleged errors, Fini argues that his constitutional rights to confront the witnesses against him and to be provided with exculpatory evidence were violated. Sutherland joins in the final part of this argument, the desired impeachment of Forish by Agent O'Brien. Some background is necessary for an evaluation of these issues.

Fini's attorney learned just before trial that Forish may have testified before a federal grand jury in 1983, and wished to make this testimony part of cross-examination. The grand jury minutes have never been produced, and the government was unable to determine if Forish had in fact so testified. To resolve the issue, the trial court held a voir dire in which it asked Forish whether he remembered testifying before the grand jury. Forish said that he did not remember doing so, but he admitted that he had been previously questioned about narcotics activity in western Massachusetts and had failed to mention Fini at that time because he had not been specifically asked about Fini. The court ruled the topic of prior grand jury testimony out of bounds. Fini's attorney did cross-examine Forish about his admitted earlier failure to implicate Fini.

 In our view, the record supports the government's contention that it was never established that Forish had actually testified before a grand jury in 1983. Thus, there was no constitutional violation arising from the government's "failure" to produce the minutes of the grand jury testimony. Moreover, Forish's answers to the court's voir dire gave defense counsel adequate opportunity to impeach Forish on cross-examination. There was no error.

 The cross-examination of Peter Gerard was limited by circumstances relat-

ed to the conflict of interest which Sutherland claims constituted ineffective assistance by her counsel. Gerard had rented property to Fini which Fini used as a "safe house" for the storage of cocaine and cash. Sutherland's trial counsel represented Gerard in a civil forfeiture proceeding concerning this property and related to the facts of this case.[4] Prior to Gerard's testimony, Sutherland's attorney asked the court to accept a stipulation between the government and him that there would be no mention on cross-examination that he was Gerard's attorney.

During cross-examination of Gerard by Fini's counsel, the subject of the civil forfeiture proceeding was raised. Following objections from the government and Sutherland's counsel, the court cut off cross-examination on the subject. Fini now argues that he was denied the opportunity to cross-examine Gerard on the subject of bias, based on Gerard's hope of receiving favorable treatment from the government in exchange for his testimony.

The problem with this argument is that Fini has demonstrated absolutely no basis for suspecting bias other than a conclusory allegation. There was in fact no agreement of any kind between the government and Gerard. Therefore, the premise of Fini's argument is not supported by the record.

■ The final prong of attack is directed against the trial court's purported ruling precluding the defense from calling DEA Agent Edward O'Brien to the stand. Agent O'Brien had been active in a drug investigation involving Gary Forish in 1983 (it is this investigation that was alleged by the defense to have led to Forish's earlier testimony before a grand jury), and he was also apparently a participant in at least in the early stages of the investigation in this case. At the time of Fini and Sutherland's trial, however, Agent O'Brien had become embroiled in legal difficulties of his own. Prior to trial the government filed a motion *in limine* to exclude any mention of Agent O'Brien at the trial. This motion was allowed.

During trial, when the subject of Forish's possible prior grand jury testimony was raised, defense counsel suggested that Agent O'Brien might be brought in to testify on that issue. The court was reluctant to pursue that course, stating that "Agent O'Brien is so tied up in his own mess, he wouldn't remember what happened two days ago, never mind anything in 1983." Later that day during colloquy with the court, Michael Jennings, attorney for the acquitted co-defendant, stated his intention to subpoena O'Brien. The following dialogue took place:

The Court: If there is a motion filed to quash, I will allow it. I want to advise you.

Mr. Jennings: It's my understanding that the Motion in Limine instructed us not to inquire into anything to do with Mr. O'Brien's current legal problems. I have no intention of doing that. I'm calling him as a witness to impeach and contradict something one of the Government witnesses said. I think I fully have the right to do that.

The Court: Well, file your motion and see what I do about it.

Mr. Jennings: Well, it would be my intention just to subpoena him. I'm going to subpoena him through the Marshals.

The Court: File it and I'll see if I get any response from the Government. I will act upon it.

After further discussion among the court, all defense counsel, and the prosecutor, the court stated to Jennings:

I think you have plenty in which to try to impeach credibility if you wish to use it. I don't think one thing more is going to add anything to what you already have, but I will allow you to go forward, if you can do so, if you want to file some sort of subpoena, and we'll see if the Government objects, and I will take it from there.

That was the last mention of a subpoena for Agent O'Brien. It was never pursued

---

**4.** This potential conflict of interest was disclosed to Sutherland and to the court below, and all agreed that there would not be an actual conflict.

by any of the defendants. Now, Fini and Sutherland contend that the trial court prevented them from presenting impeachment material through the testimony of Agent O'Brien. This contention cannot stand. There is no indication that O'Brien had any impeachment evidence to offer. Moreover, neither appellant chose to follow this avenue of impeachment at trial. No doubt the trial judge indicated that he disfavored the tactic. Nevertheless, his final words on the subject constituted a plain invitation to defense counsel to request the subpoena. Having failed to do so, they cannot now lay that failure at the court's door.

### I. *Failure to instruct on defense theory.*

■ The court instructed the jury as follows:

Two persons may be found to have conspired even though the evidence of one's role is greater than the evidence of another's role.

However, while you may find that a single act may be sufficient to draw a defendant within the ambit of the conspiracy, you would have to determine that the single act was specifically intended to further the objective of the conspiracy before you could convict the defendant for that single act.

Sutherland's counsel objected to this instruction, which differed somewhat from that requested by the defense, and to the court's refusal to give an instruction on the distinction between aiding and abetting and conspiracy. These objections are now raised on appeal by Sutherland alone.

Sutherland's theory in the case was that while the evidence may have shown that she assisted Fini in some discrete criminal acts, she was not guilty of a larger conspiracy. The evidence, however, does not bear out this theory. Rather, the facts show that Sutherland acted as Fini's assistant in a lengthy and profitable drug business. Therefore it was not error to refuse to give the requested instructions.

### J. *Denial of severance motion.*

Sutherland moved before trial to sever Fini's two tax evasion counts from the parties' joint trial on the drug charges. She now claims that the refusal to sever was reversible error. We disagree.

■ Rule 8(b) of the Federal Rules of Criminal Procedure states the standard for joinder of defendants:

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). The requirements of Rule 8(b) were satisfied by the joinder here. The acts and transactions that were relevant to the drug offenses were also relevant to the tax evasion offenses. The government used the expenditures method of proof for the tax counts, which involves demonstrating that a defendant made purchases exceeding his reported income. The expenditures method requires the government to show a likely source of income financing the excessive purchases. *Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 136–37, 99 L.Ed. 150 (1954). In this case the government proved that the likely source of income was drug distribution. If the tax evasion counts had been severed from the drug trial, the drug evidence would have been presented in the tax trial to prove the likely source of income.

Furthermore, the same tape recordings were used by the government to prove both the drug and the tax offenses. Not only were drug transactions captured on these recordings; they also contained conversations about the many expensive motor vehicles purchased by Fini. As many of these purchases were made through nominees, the tapes formed an essential link between the purchases and Fini. Because of this overlap in evidence, joinder was proper. *See United States v. Doherty,* 867 F.2d 47, 63 (1st Cir.), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (joinder proper where common factual

questions allow the jury to draw consistent conclusion regarding facts relevant to separate counts); *United States v. Arruda,* 715 F.2d 671, 678–79 (1st Cir.1983) (joinder proper where facts and legal issues overlap sufficiently so that the practical benefit of a consolidated trial outweighs each defendant's interest in having guilt considered individually).

■■■ Because joinder was proper under Rule 8(b), the denial of Sutherland's motion is error only if it constituted "an abuse of discretion which deprived [her] ... of a fair trial and resulted in a possible miscarriage of justice." *United States v. Santiago Barbosa,* 666 F.2d 704, 708 (1st Cir.1981); Fed.R.Crim.P. 14. Sutherland asserts that evidence of Fini's tax evasion was prejudicial to her in that it allowed the jury to infer that Sutherland had a criminal disposition and that she had received financial benefit from the unreported drug proceeds. She also complains that some of the evidence implicated her directly, and she challenges the failure of the court to give a limiting instruction.

The record, however, does not show unfair prejudice. None of the tax witnesses directly implicated Sutherland. To the extent that Sutherland was implicated, it was through her own tape-recorded statement ("they found out we own some things we shouldn't own") or through evidence to which her attorney stipulated admissibility (see *infra* at 779–780).

■■■ Finally, we note that Sutherland's trial counsel failed to request the court to instruct the jury that it should consider the tax evasion evidence only against Fini. It may be true, as Sutherland now asserts in her brief, that this failure evinces substandard performance by trial counsel. As we discussed above, however, claims of ineffective assistance are best raised through a collateral proceeding. As we have found no undue prejudice, and thus no plain error, we do not see a reason here to depart from our established procedure not to consider issues raised for the first time on appeal. At any rate, the court below did give at least a partial limiting instruction when it told the jury to "give separate, personal consideration to the case of each individual defendant."

### K. *Admission of testimony regarding bank checks.*

■■■ All defendants and the government stipulated before trial to the admissibility of certain bank deposit items under Federal Rule of Evidence 803(6), which is the exception to the hearsay rule for records of regularly conducted activity. The stipulation provided that "[a]ny party shall be entitled to call any witness to explain or testify concerning any document" covered by the stipulation. Among the items deposited were bank checks bearing the name of Dianne Sutherland as payee. Although the primary evidentiary purpose of the bank checks was to prove the tax evasion counts against Fini, they may have also served to support the conspiracy case against Sutherland.

At trial, the government introduced these exhibits through the testimony of two retail merchants who testified that the checks had been used to pay for expensive motor vehicles purchased by Alan Fini. The witnesses went further and stated, in answer to a question from the prosecuting attorney, that Dianne Sutherland's name appeared on the checks. On the first of the six occasions on which this testimony occurred, Sutherland's attorney objected. Fini's counsel reminded Sutherland's counsel that they had stipulated to the checks, and the court directed the witness to answer. Sutherland now contends that this testimony was hearsay and inadmissible to prove that Dianne Sutherland was the purchaser of the checks.

There was no error, due to the simple fact that the checks themselves were properly in evidence and had been stipulated to by all parties. Sutherland's name appeared plainly on the checks. This evidence does not provide a basis for reversal of the conviction.

### L. *Invasion of jury's province.*

■■■ As a final challenge, Fini contends that the trial court erred in permitting tes-

timony from Gilbert George, the government's summary witness in the tax case. As we have stated, the government used the expenditures method to prove additional tax due and owing, an element of the charge that Fini willfully evaded income tax. The expenditures method requires that the government: (1) demonstrate that the appellant's expenditures did not result from cash on hand, or the conversion of assets on hand at the beginning of the period; (2) establish through independent evidence that the expenditures charged to the appellant were non-deductible; (3) establish a likely source of income from which the expenditures sprang, or negate non-taxable sources of income; and (4) investigate all relevant leads reasonably susceptible to being checked. *Taglianetti v. United States*, 398 F.2d 558, 562 (1st Cir. 1968), *aff'd*, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).

▮ The government offered Gilbert George as a summary witness to calculate income taxes due. George applied the expenditures method of proof to show the income tax due for each year of the tax evasion charge. Fini complains that George essentially gave his expert opinion that Fini was guilty of not only the tax evasion counts but the drug counts as well. For example, when asked from where he believed Fini obtained the funds to make the purchases, George stated:

> Based on the only discussion I have heard of possible sources of other income has been from drug activities. As part of the answer I would therefore say in this case these excess expenditures were derived from the net profits from the sale of illegal drugs.

Fini summarizes George's testimony as drawing the following inferences for the jury: Fini spent a lot of money; he didn't earn it as a farmer; therefore he earned it through his drug activity.

Fini's premise demonstrates a misconception of the expenditures method of proof. Most of George's testimony was directed toward showing that the expenditures were made from current income, as opposed to savings or the conversion of other assets.

This testimony was essential to meet the first of the *Taglianetti* requirements. The third requirement is that the government must establish a likely source of income. To satisfy this step George testified that, based on the evidence already presented at the trial, the likely source of income in Fini's case was the sale of controlled substances. *See United States v. Sorrentino*, 726 F.2d 876, 881 (1st Cir.1984). We find that the government's use of the summary witness was not improper.

### III.

### CONCLUSION

In spite of the collection of errors asserted by Sutherland and Fini as grounds for either reversal of their convictions or at the least a new trial, a review of the record has left this court with the firm impression that given the weight of the evidence, both appellants received a fair trial and were fairly convicted. For this reason, and for the reasons discussed above, the convictions are *affirmed*.