USA v. Sandler                    CR-92-81-B    12/30/92


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

         v.                          Criminal No. 92-81-1-B

Jonathan Sandler


O R D E R


Defendant Jonathan Sandler has been charged with possession of marijuana with intent to distribute, in violation of Title 21 U.S.C. §841(a)(1).  The court held a hearing on December 17, 1992 on the defendant's three motions to suppress.


FACTS

Approximately one year ago, Trooper Quinn of the New Hampshire State Police Narcotics Unit and Agent Binsack of the Drug Enforcement Administration ("DEA") were involved in a DEA investigation which led to the arrest and conviction of the informant in this case, Gary Bardsley.  Bardsley later named the defendant, Jonathan Sandler, as his supplier of marijuana and agreed to work with Trooper Quinn and Agent Binsack in their investigation of Sandler.

Trooper Quinn and Agent Binsack devised a plan to convince Sandler to bring marijuana to New Hampshire under the pretext that Bardsley had a willing buyer for the marijuana. After several telephone conversations between Bardsley and Sandler which were recorded with Bardsley's permission, Bardsley was able to convince Sandler to meet him in New Hampshire.

On September 16, 1992, Sandler called Bardsley's home and left a message that he could be reached at the Susse Chalet Motel in Tewksbury, Massachusetts. Trooper Quinn was able to confirm that the telephone number Sandler had left with the message belonged to the Susse Chalet. He then notified the Tewksbury police, who were able to verify that a person fitting Sandler's description had checked into the motel. Trooper Quinn then had Bardsley place a recorded call to Sandler at the Susse Chalet. Trooper Quinn stood beside Bardsley throughout the call and overheard Bardsley's end of the conversation.

In the ensuing conversation, Sandler informed Bardsley that he had brought "fifty" with him from Texas and that he had already sold most of it. He claimed that he had approximately "five" left to sell that were "all bud." Bardsley and Sandler then agreed to meet at the 99 Restaurant in Salem, New Hampshire that night to complete the sale. Trooper Quinn listened to the tape of this call as he traveled to Salem where the meeting between Sandler and Bardsley would take place.

Prior to the meeting, Bardsley was fitted with a tape recorder and a monitoring device so that his conversation with Sandler could

-2-

be both recorded and overheard by Trooper Quinn and the other investigators. The trooper who had been designated to play the role of the buyer then drove Bardsley to the parking lot of the 99 Restaurant.

When Bardsley and Sandler met in the parking lot, Sandler invited Bardsley into his automobile. Through the monitoring device, Trooper Quinn was able to hear Sandler tell Bardsley that "the marijuana was close by." Sandler then took Bardsley back to the Susse Chalet.

After they entered Sandler's motel room, Trooper Quinn heard the sound of Sandler and Bardsley "rummaging" through what he believed to be a package of marijuana. Bardsley and Sandler left the motel shortly after arriving and drove back to the parking lot of the 99 Restaurant.

Earlier that evening, Bardsley and Trooper Quinn had agreed that if the marijuana was inside the vehicle when Sandler got to the 99 Restaurant, Bardsley would signal the police by leaving the vehicle and walking briskly towards the restaurant. If he walked slowly, the police would know that the marijuana was not in the vehicle. Once Bardsley and Sandler returned to the parking lot, Bardsley left the vehicle and gave the agreed-upon signal. The investigators then arrested Sandler as he made his way towards the restaurant.

After Sandler was arrested, Bardsley informed Trooper Quinn that the marijuana was on the floor of Sandler's vehicle near the front seat. The investigators then searched the vehicle and found

five pounds of marijuana in a bag on the floor of the front seat.

The investigators also searched Sandler's motel room and made certain observations.  They later obtained a warrant, returned to the room and seized cash, marijuana and drug paraphernalia.

## DISCUSSION

Sandler contends that evidence concerning his recorded conversations with Bardsley should be suppressed because his conversations were intercepted in violation of Massachusetts and New Hampshire law.  He further contends that without the intercepted communications, the investigators lacked probable cause to arrest him or to search the vehicle.  Finally, he argues the search of his vehicle was improper because the investigators failed to obtain a search warrant for the vehicle.  The court does not find these arguments persuasive.[1]

## THE INTERCEPTED COMMUNICATIONS

Sandler does not contend that his conversations with Bardsley were intercepted in violation of federal law.  Nevertheless, he argues that evidence concerning the conversations should be suppressed because the conversations were intercepted in violation

_____

[1]  Sandler also contends that evidence obtained during the search of his Susse Chalet motel room should be suppressed.  The government has agreed that it will not seek to introduce any of the evidence seized from the motel room as part of its case-in-chief.  Therefore, the court need not address the defendant's motion to suppress at this time.  See e.g., United States v. Havens, 446 U.S. 620, 627-28 (1980); Walder v. United States, 347 U.S. 62, 65 (1954).

of state law.

Sandler's claim is controlled by United States v. Sutherland, 929 F.2d 765, 771 (1st Cir. 1991). In Sutherland, the First Circuit Court of Appeals rejected an argument similar to the one Sandler makes in this case and held that the admissibility of wiretap evidence in a federal proceeding is governed by federal law. Id. The only circumstance under which the Sutherland court suggested that a federal court may exclude evidence obtained in violation of state law but not federal law is ". . . in an extreme case of flagrant abuse of the law by state officials, where federal officials seek to capitalize on that abuse . . . ." Id. at 770.

Sandler contends that Trooper Quinn's conduct was an extreme case of flagrant abuse of state law because he was not acting under the supervision of a federal law enforcement official when he caused Sandler's communications to be intercepted and because he violated the wiretap laws of two states. The court finds that these arguments are both factually and legally incorrect. Contrary to Sandler's assertions, the evidence produced at the suppression hearing established that Trooper Quinn conducted his investigation in close cooperation with federal officials. Agent Binsack helped Trooper Quinn develop the plan to arrest Sandler, she was consulted at every step of the investigation, and she was present when Sandler was arrested. The court cannot accept Sandler's contention that the intercepted communications should be suppressed because state police officers, rather than Agent Binsack, attached the monitoring devices to Bardsley's telephone and person. Moreover,

the case is devoid of any evidence of an extreme and flagrant abuse of state law by Trooper Quinn. Even if he had not been engaged in a joint investigation with federal officials when he caused Sandler's communications with Bardsley to be intercepted, Trooper Quinn's conduct was not any more flagrant or extreme than the conduct at issue in <u>Sutherland.</u> The mere fact that conversations were intercepted in two states in the present case does not distinguish this case from <u>Sutherland</u>. Accordingly, the court declines to suppress the evidence of Sandler's intercepted conversations.

## THE VEHICLE SEARCH

Sandler contends that the marijuana seized from his automobile should be suppressed because the government lacked both probable cause and a warrant to search his vehicle.

The court has already held that the intercepted communications may be used in the government's case against Sandler. For the same reasons, the court rejects Sandler's claims that they cannot be relied upon to support a finding of probable cause to search his automobile.

When the intercepted communications are considered, there was ample probable cause to support the search of his vehicle. Through the intercepted communications, Trooper Quinn was able to confirm that Sandler was planning to bring a substantial quantity of marijuana with him to the parking lot of the 99 Restaurant. In Bardsley's telephone call with Sandler several hours prior to his

arrest, Sandler stated that he had "five" left to sell that were "all bud," a phrase known by Trooper Quinn to describe marijuana. The conversation and sounds Trooper Quinn overheard on the monitoring device while Bardsley and Sandler were driving from the 99 Restaurant to Sandler's hotel and back served as confirmation that the expected marijuana sale was proceeding according to plan. Finally, Bardsley's signal that the marijuana was in the car after Sandler and Bardsley got back to the 99 Restaurant established that the marijuana was in Sandler's vehicle. Under the totality of the circumstances, there can be little doubt that Trooper Quinn and his colleagues had probable cause to search his vehicle. See e.g., Gates v. Illinois, 462 U.S. 213, 217 (1983); United States v. Maguire, 918 F.2d 254, 257 (1st Cir. 1990); cert. denied 111 S.Ct. 1421 (1991).

The court also rejects Sandler's argument that the vehicle search was improper because it was not conducted pursuant to a validly obtained search warrant. The government does not require a warrant to search a vehicle located in a public place if the government has probable cause. California v. Acevedo, 111 S.Ct. 1982, 1985 (1991); United States v. Ross, 456 U.S. 798, 800 (1982). Sandler argues that the automobile exception to the warrant requirement is inapplicable because he was not in the vehicle when he was arrested and because the vehicle was parked and locked when it was searched. These arguments simply have no support in the case law. Exigency and the defendant's close proximity to the vehicle at the time of the search are not necessary to justify a

warrantless automobile search. <u>See</u> <u>United States v. Johns</u>, 469 U.S. 478, 486-7 (1985); <u>United States v. Panitz</u>, 907 F.2d 1267, 1271-72 (1st Cir. 1990). Accordingly, the court denies Sandler's motion to suppress the warrantless search of his automobile.[2]

<u>THE DEFENDANT'S PERSON</u>

The same evidence which provided probable cause to search Sandler's vehicle provided probable cause to support his arrest. The warrantless search of the defendant's person was thus permissible as a search incident to his lawful arrest. <u>United States v. Robinson</u>, 414 U.S. 218, 224-6 (1973); <u>Maguire</u>, 918 F.2d at 259.

<u>CONCLUSION</u>

Sandler's motion to suppress tape recordings of oral communications (document no. 18) and motion to suppress warrantless search of the defendant's person and motor vehicle (document no. 16) are denied. Because the government has agreed not to seek to introduce evidence obtained from the search of the defendant's motel room in its case-in-chief, the court need not rule on this motion (document no. 17).

---

[2] The court need not determine whether the search of Sandler's vehicle was a lawful search incident to arrest since the court has concluded that the search was permitted under the automobile exception.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge

December 28, 1992

cc: Thomas J. Gleason, Esquire
    U.S. Attorney
    U.S. Probation
    U.S. Marshal