**UNITED STATES of America,**

v.

**Lamont FERNANDEZ, Defendant.**

**Criminal No. 07–10431–NMG.**

United States District Court,
D. Massachusetts.

Aug. 4, 2008.

Kenneth G. Shine, United States Attorney's Office, Boston, MA, for Plaintiff.

Thomas J. Iovieno, South Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The defendant, Lamont Fernandez ("Fernandez"), was indicted on December 19, 2007, for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He has filed a motion to suppress the firearm.

## I. *Background*

At about 4:30 p.m. on October 20, 2007, Taunton Police Officer Pistolese was seated in his parked police cruiser across the street from the Regal Liquors on Bay Street in Taunton, Massachusetts. He observed a red Dodge Magnum ("the red Dodge") pull into the Regal Liquors parking lot about 150 feet away just before three black males, two on bicycles and one walking, arrived.

The male on foot approached the red Dodge and the two males on bicycles pedaled away. The male on foot shook hands with the driver through the driver's side window before he went to the rear passenger side door and got in. The Dodge then pulled out of the parking lot onto Bay Street, immediately in front of a blue pickup truck that was also driving in the same direction. Officer Pistolese testified that the Dodge's entry onto Bay Street nearly caused a collision and that the pickup truck had to swerve and apply its brakes to avoid an accident. Officer Pistolese activated his overhead lights and siren and initiated a traffic stop for failure to yield, an alleged violation of M.G.L. c. 89, § 8. After the red Dodge stopped, Officer Pistolese remained seated in his cruiser about 20 to 25 feet behind the Dodge for a short time (less than two minutes) to initiate an inquiry on the license plate number.

Officer Pistolese then approached the red Dodge on foot from the passenger side. The windows were tinted to a degree that made it impossible to see into the vehicle and thus Officer Pistolese could not observe the occupants until after he approached. When Officer Pistolese arrived at the passenger side of the vehicle, he ordered the driver to roll down all of the windows. He then noticed that none of the three occupants was wearing a seat belt which Officer Pistolese believed to be a violation of M.G.L. c. 90, § 13A. He asked the occupants of the car for their names and dates of birth so that he could issue them citations for seatbelt violations. Fernandez was the front seat passenger. After Officer Pistolese returned to his cruiser to check for outstanding warrants, he discovered that Thomas Young ("Young"), the driver of the car, and the backseat passenger did not have warrants but that Fernandez did.

While Officer Pistolese was checking for warrants, Officer Jeffrey Arruda ("Arruda"), who was driving his cruiser in the opposite direction on Bay Street, pulled next to Officer Pistolese's cruiser and was requested by Pistolese to render back-up assistance. Shortly thereafter, Officer Sean Smith ("Smith") also arrived on the scene to assist and parked his cruiser in front of the red Dodge. All three of the officers approached the Dodge. Officer Smith asked Fernandez to get out of the car because he was being placed under arrest. Officer Arruda pat frisked Fernandez and found a black Titan Tiger .38 caliber handgun in his waistband area. The officers then searched the other passengers of the car and the car itself. Those searches revealed a bag of marijuana and a backpack in the car containing another firearm, two bags of cocaine, a digital scale, two cellular telephones and a checkbook containing checks bearing Young's name. All three of the occupants of the Dodge were charged with firearms and narcotics violations in Massachusetts state court and were issued citations for failure to wear a seat belt. Young was also issued a citation for a violation of M.G.L. c. 89, § 8 for "failure to yield".

Fernandez was indicted in federal court on December 19, 2007. Nine days later, on the day Fernandez's motion to suppress was scheduled to be heard in state court, Fernandez's state charges were dismissed and he was taken into federal custody. On March 24, 2008, he filed a motion to suppress evidence in federal court which the government opposes.

## II. *Defendant's Motion to Suppress Evidence*

In his motion to suppress, Fernandez argues that the firearm recovered from his person should be suppressed because it was seized as a result of an impermissible

stop and questioning of Fernandez. He contends that 1) the initial stop of the motor vehicle was improper under both Massachusetts and federal law, 2) the Court should apply Massachusetts law under the "silver platter" doctrine and under Massachusetts law the questioning of passenger Fernandez was improper and 3) under federal law, the questioning of Fernandez was improper.

## A. The Lawfulness of the Initial Stop

### 1. Legal Standard

 The decision to stop a motor vehicle is reasonable where police have probable cause to believe that a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In fact, the police may stop a vehicle based upon reasonable and articulable suspicion that the vehicle was traveling in violation of a traffic law. *United States v. Fox,* 393 F.3d 52, 59 (1st Cir. 2004), *vacated on other grounds,* 545 U.S. 1125, 125 S.Ct. 2949, 162 L.Ed.2d 864 (2005). Generally, an officer's good faith belief that a law has been violated is insufficient if that officer has misunderstood the law. *See United States v. Coplin,* 463 F.3d 96, 101 (1st Cir.2006).

### 2. Analysis

██] The government contends that the initial stop of the vehicle was lawful because the red Dodge failed to yield upon exiting the Regal Liquor parking lot thereby violating M.G.L. c. 89, § 8. That statute provides in relevant part:

When two vehicles approach or enter an intersection of any ways, as defined in section one of chapter ninety, at approximately the same instant, the operator of the vehicle on the left shall yield the right-of-way to the vehicle on the right. . . .

Section one of chapter 90 defines "way" as any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers.

The government contends, and Fernandez does not disagree, that the red Dodge pulled out directly in front of a pickup truck. Fernandez argues, however, that he did not violate the statutory provision cited by the government and the Dodge did not nearly collide with the pickup truck. The government responds that Officer Pistolese had probable cause to believe that the driver of the Dodge had violated M.G.L. c. 89, § 8 by failing to yield the right of way to an approaching motor vehicle.

Officer Pistolese credibly testified that he observed the pickup truck swerve and apply its brakes in order to avoid colliding with the red Dodge. That observation would provide Officer Pistolese with at least reasonable suspicion that Young had violated a traffic law if, in fact, yielding was required of him under Massachusetts law. As Fernandez points out, M.G.L. c. 89, § 8, the statute pursuant to which Young was cited, does not, on its face, require a car in Young's position to yield. The government contends in a supplemental brief that M.G.L. c. 89, § 8 is the "historic 'catch all' for rights of way on public ways, intersections and rotaries" but it cites no authority for that contention and this Court has found none. Commonly understood "rules of the road" and a Massachusetts regulation that states that an operator who enters a main road from a secondary road is more than 50% at fault if a collision occurs, 211 C.M.R. § 74.04(11), indicate that Young committed a traffic violation when he drove out of a parking

lot and failed to yield to a vehicle traveling on a public way.

Moreover, as the government points out, Officer Pistolese had reasonable suspicion to believe that Young's hazardous entry onto Bay Street, which almost caused a collision, violated M.G.L. c. 90, § 24(1)(h)(2)(a) which provides in relevant part:

> Whoever upon any way or in any place to which the public has a right of access, or any place to which members of the public have access as invitees or licensees, operates a motor vehicle recklessly, or operates such a vehicle negligently so that the lives or safety of the public might be endangered ... shall be punished. ...

Officer Pistolese observed the red Dodge enter onto Bay Street in a manner that almost caused a collision and as such he had reasonable suspicion to believe that Young was operating the vehicle negligently and endangering the safety of the public. Because that reasonable suspicion gave Officer Pistolese lawful grounds to stop the red Dodge, Fernandez's motion to suppress is not supported by evidence of an unlawful stop.

### B. The "Silver Platter" Doctrine and Massachusetts Law

#### 1. Legal Standard for the "Silver Platter" Doctrine

█ Federal law governs federal prosecutions of defendants in federal court. *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir.1991). The First Circuit Court of Appeals has suggested that in "an extreme case of flagrant abuse of the law by state officials, where federal officials seek to capitalize on that abuse" a federal court may exercise its supervisory power to exclude evidence. *Id.* at 770. The First Circuit has made it clear, however, that there is no "exception to the general rule that federal law governs in federal prosecutions". *Id.*

#### 2. Analysis

█ Fernandez argues that Massachusetts law governs suppression of the firearm in this case because Officer Pistolese flagrantly disobeyed state law by inquiring of Fernandez his name and date of birth. Even if asking Fernandez his name and date of birth was a violation of Massachusetts law, a point this Court does not concede, such questioning falls well below a "flagrant abuse of the law" and therefore this Court will not exercise its supervisory powers to apply Massachusetts law in this federal proceeding.

### C. The Questioning of Fernandez Under Federal Law

█ Fernandez argues that under federal law it was improper for Officer Pistolese to ask him for identifying information. He suggests that even if the initial stop was lawful, Officer Pistolese's questioning of him was outside the scope of the stop. The government responds that Officer Pistolese was permitted to ask Fernandez for identification in order to issue him a citation for a seatbelt violation under M.G.L. c. 90, § 13A. Fernandez responds that he did not violate that statute because, by the time the officer observed Fernandez without a secured seatbelt, the Dodge was parked on the side of the road and had not been mobile for a minute or two. The subject statute forbids a person from "rid[ing] in a private passenger motor vehicle ... on any way" without wearing a seat belt and Fernandez contends that he was not riding on any way when Officer Pistolese observed him.

The First Circuit Court of Appeals has raised (but not decided) the question of whether issuing a seatbelt citation is proper when the police officer has not seen the

seatbelt-less occupant of a car while the car was moving. *United States v. Henderson,* 463 F.3d 27, 31 (1st Cir.2006). The First Circuit cited the only Massachusetts case it found on point, a Superior Court case which indicated that the passenger of a vehicle is not obligated to wear a seatbelt while the vehicle is stopped. *Id.* (citing *Commonwealth v. Nuñez,* 15 Mass. L. Rptr. 536, 2002 WL 31973248 (Mass.Super.2002). In *Nuñez* the Superior Court held that even though the defendant was not wearing a seatbelt after 1) the officer stopped the van in which the defendant was riding, 2) the officer had spoken with the driver, 3) the driver had given the officer his license and registration and 4) the officer had determined that the paperwork was in order, there was no violation of M.G.L. c. 90, § 13A. More recent Massachusetts cases have, however, upheld a request for identification from passengers who were observed without seatbelts during a traffic stop. *See Commonwealth v. Goewey,* 69 Mass.App.Ct. 429, 430, 433–34, 868 N.E.2d 651 (2007); *Commonwealth v. Pierce,* 67 Mass App.Ct. 1103, 2006 WL 2336917 (2006)(unpublished). The more recent cases indicate that Massachusetts law allows officers to issue citations for seatbelt violations despite not having seen the passengers without fastened seatbelts while the vehicle was in motion. It was not improper for Officer Pistolese to ask Fernandez for his name and date of birth and, consequently, the firearm will not be suppressed.

### ORDER

In accordance with the foregoing, Defendant's motion to suppress (Docket No. 10) is **DENIED.**

So ordered.