**UNITED STATES of America, Plaintiff,**

v.

**[1] Alban Santana JIMENEZ [2] Fernando J. Torres Llorens [3] Maritza Del Valle Calero, Defendants.**

**No. 97–282 SEC.**

United States District Court, D. Puerto Rico.

Oct. 25, 1999.

José A. Ruiz, Edna C. Rosario Muñoz, Rebecca Kellog, AUSA, U.S. Attorney's Office District of P.R., Criminal Division, San Juan, PR, for Plaintiffs.

Nelson Escalona–Colón, Ponce, Joseph C. Laws, FPD, Federal Public Defender Office, Epifanio Moralez–Cruz, FPD, Federal Public Defender Office, Arturo R. Negron–Garcia, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

On April 22, 1998, a grand jury returned a superseding indictment against defendants Albán Santana Jiménez, Fernando J. Torres Lloréns and Maritza Del Valle Calero, charging them with conspiracy to interfere with interstate commerce by extortion, and actual interference with interstate commerce by extortion, in violation of 18 U.S.C. §§ 2, 371, 1951 (**Docket # 24**). Pending is defendants' motion challenging subject matter jurisdiction (**Docket # 38**). On October 19, 1999, we denied defendants' motion stating that an opinion would follow (**Docket # 62**). Now, for the reasons set forth below, and as anticipated, we deny defendants' motion (**Docket # 38**).

### Factual Background

The substance of the indictment is that during a period spanning from April, 1997 until October, 1997, defendants, who at that time were all employees of the Commonwealth of Puerto Rico, Department of the Treasury (hereinafter "Hacienda"), conspired to extort and actually extorted a certain person (hereinafter "Business Owner"), who was the owner of two air conditioner repair and installation corporations located in Ponce, Puerto Rico and engaged in interstate commerce, to wit: Air Conditioning & General Contractors (hereinafter "AC & GC") and Dominicci Air Conditioner, Inc. (hereinafter "DACI"). Count one of the indictment charges that: (1) approximately on July 30, 1997, defendant Del Valle Calero during a telephone conversation instructed Business Owner to deliver $10,000 to defendants Santana Jiménez and Torres Lloréns, in order to reduce Business Owner's income tax debt with Hacienda; (2) that approximately on July 31, 1997, defendant Santana Jiménez received $10,000 from Business Owner in exchange for reducing his income tax debt with Hacienda; (3) that approximately on September 30, 1997, defendant Del Valle Calero threatened Business Owner with reviewing his corporate income tax returns for 1995 and 1996, if he did not call defendant Torres Lloréns; and (4) that approximately on October 1, 1997, defendant Torres Lloréns informed Business Owner that he had already prepared his "paperwork with Hacienda" (**Docket 24**). Count two charges that defendants aided and abetted each other in the extortion of Business Owner by, "in connection with the determination, assessment and collection of corporate income taxes, ∴. obtain[ing] payment of monies not due them or their offices, in the amount of ... $10,000, from B[usiness] O[wner], with his consent, induced by the wrongful use of fear of economic harm under color of official right" (**Docket # 24**).

On August 14, 1998, defendants filed the instant "Motion Challenging Subject Matter Jurisdiction and Requesting an Evidentiary Hearing" (**Docket # 38**), charging that "the statutorily required effect on

interstate commerce is not present in the instant case," and requesting, therefore, that it "be dismissed for lack of subject matter jurisdiction." **Id. at ¶ 1.** According to defendants, "the evidence provided in discovery by the United States is not sufficient to establish even a 'de minimis' impact on interstate commerce and there is[,] therefore[,] no subject matter jurisdiction. The discovery provided only tends to establish that DACI was not operating from approximately 1995, and that the alleged extortion could[,] therefore[,] have no effect on an entity which was not operating in 1997." **Id. at ¶ 16.** Defendants request that "[t]he United States ... establish with clear and convincing evidence that DACI was in fact 'going concerns' (sic) at the time that the alleged extortion occurred, and that there was at least a 'de minimis' impact on interstate commerce when the alleged extortion took place, that is, April 29, 1997, through October 1, 1997." [1] **Id. at ¶ 17.**

In its opposition, the government counters, under a "depletion of assets" theory, that in order to meet defendants' alleged extortionate demands, Business Owner "was forced to take from the business' assets, thereby curtailing said business' ability to purchase goods in interstate commerce" **(Docket # 42, at 4).** This, according to the government, "shows an impact, or reasonable probability of impact, on interstate commerce sufficient to support a conviction under the Hobbs Act." **Id.** Regarding defendants' contention that DACI was not doing business at the time of the alleged offenses, the government challenges that:

[A]t the time the defendants approached ... Business Owner to extort him and request[ ] money from him, the businesses owed money to Hacienda and were under investigation by said department. That is the reason why the defendants approach[ed] ... [Business Owner] and extort[ed] him. In order to establish that the businesses were operating and that they were receiving goods from ... interstate commerce (sic), the income tax returns are not an essential element of the offense, there are other ways to establish that ... Business Owner and his business[es] were in operation during the time of the offense[s] charged.

**Id. at 5.**

A hearing on defendants' motion was held on February 24, 1999 **(Docket # 50),** and May 24, 1999 **(Docket # 51).** At this two-day hearing, the following facts were established. Some time in 1989, Business Owner incorporated DACI, although it was already doing business, without being incorporated, since 1986. While it employed several refrigeration technicians **(Docket # 51, at 14),** DACI was pretty much a one man show run by Business Owner. He was not only DACI's president and sole shareholder, but he also worked as a refrigeration technician installing and servicing air conditioners. At the same time, Business Owner was in charge of the corporation's administration and day-to-day operations. **Id. at 5–6** In this regard, he was responsible for purchasing the products sold and the equipment used by DACI, as well as its office supplies. **Id. at 6–8.** Some of the air conditioner brands carried by DACI, and all the refrigerants it used in its servicing, were purchased in the continental United States. **Id. at 6–8.** DACI also had a fleet of four vehicles which were brought into Puerto Rico from the United States mainland. DACI's offices were located at Villa Flores, St. # 1, A–3, in Ponce, Puerto Rico. **Id. at 8–9, 25.**

By 1994, DACI was experiencing financial difficulties, and Business Owner decided to create a new corporation with the help of his wife and father-in-law. Thus,

---

1.   Defendants do not challenge neither the sufficiency of the government's evidence to establish the elements of the offense nor the fact that the money paid to meet the alleged extor- tionate demands was provided by the Federal Bureau of Investigation **(Docket # 51, at 31–32).**

AC & GC was incorporated. **Id. at 13, 50.** DACI, however, kept operating until 1996, eventually filing for bankruptcy in 1997.[2] There was thus a period of two years during which both corporations' operations overlapped. **Id. at 6, 32, 34, 44, 45.** In its bankruptcy petition, DACI included an unsecured priority claim in favor of Hacienda in the amount of $163,136 (**Government's Exhibit # 10, Schedule E**).

The creation of AC & GC notwithstanding, nothing changed in the business transacted by Business Owner under DACI. **Id. at 27.** Still after DACI had filed for bankruptcy nothing changed. Indeed, even after DACI was not longer operational, some clients still paid Business Owner for services rendered by AC & GC with checks issued to the order of DACI, which were easily cashed. **Id. at 50–51, 72–73.** AC & GC occupied the same office space previously occupied by DACI, **id. at 14, 24–25;** DACI's employees went on to work for AC & GC, **id. at 14–15, 82;** AC & GC used DACI's fleet of vehicles, **id. at 15;** AC & GC's clientele and suppliers were the same as DACI's, **id. at 19–20;** and Business Owner's responsibilities in AC & GC were the same as those in DACI, **id. at 17, 48–50,** even though Business Owner did not formally hold any title in the former. Business Owner did not earn a fixed salary from either DACI or AC & GC. Instead, "[w]hatever [money] was left over, if there was any left over[,]" he "collected." **Id. at 48–49.** Furthermore, neither DACI nor AC & GC contracted the services of an accountant or auditor; Business Owner managed both corporations' finances to the best of his abilities.[3] **Id. at 27–28.** It should be noted, however, that AC & GC's stock was not wholly owned by Business Owner, but jointly by he and his wife. **Id. at 39.** Simply put, as Business Owner stated at the evidentiary hearing: "I just kept running the business under the other name." **Id. at 41.** By 1997, AC & GC was also experiencing financial hardship (**Docket # 50, at 30**). Eventually, AC & GC, like its predecessor, filed for bankruptcy in 1998 (**Government's Exhibit # 11**).

Against this background, we must determine whether defendants are correct in challenging that their alleged extortionate conduct did not have an effect on interstate commerce sufficient to meet the jurisdictional requirement of the Hobbs Act.

### Applicable Law/Analysis

Section 1951 of title 18 of the United States Code, commonly known as the Hobbs Act, in pertinent part provides:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other com-

---

**2.** Business Owner also filed for bankruptcy in 1997. **Id. at 45.**

**3.** Not surprisingly, Business Owner did not keep accurate business records of either corporation. **Id. at 41, 43–44.**

merce over which the United States has jurisdiction.

As the First Circuit has held: "Whether or not interstate commerce is affected under the Hobbs Act is a mixed question of law and fact. The district court must determine if, as a matter of law, interstate commerce could be affected. If the court determines it could be, the question is turned over to the jury to determine if, as a matter of fact, interstate commerce was affected as the district court charged it could have been." *United States v. McKenna*, 889 F.2d 1168, 1171 (1st Cir.1989) (citation omitted). The prosecution's burden to establish the court's jurisdiction is not onerous; "the government need only show a realistic probability of a de minimis effect on interstate commerce, in order to bring extortion within the reach of the Hobbs Act." *United States v. Rivera–Medina*, 845 F.2d 12, 15 (1st Cir.1988) (citing *United States v. Jarabek*, 726 F.2d 889, 900–01 (1st Cir. 1984)).

Like other circuits, the First Circuit has interpreted the Hobbs Act's definition of extortion in the disjunctive, finding that "the prosecution can establish a violation by showing that a defendant induced payment *either* through the use of actual or threatened force, violence, or fear, *or* under color of official right." *United States v. Bucci*, 839 F.2d 825, 827 (1st Cir.1988) (citation omitted). *See also Rivera–Medina*, 845 F.2d at 14. The First Circuit has clarified, moreover, that "fear" "can mean the 'fear of economic loss,' including 'the possibility of lost business opportunities . . . .'" *Bucci*, 839 F.2d at 827–28 (citations omitted). *See also United States v. DeLuca*, 17 F.3d 6, 9 (1st Cir.1994) ("the 'fear' element under the Hobbs Act can be satisfied by threats other than threats of bodily harm, say, by putting the victim in fear of economic harm.").

It is clear, however, that under the disjunctive reading of the definition of "extortion" under the Hobbs Act, "extortion under color of official right need not be the product of 'actual or threatened force, violence, or fear.'" *Rivera–Medina*, 845 F.2d at 14. Thus,

[i]n the case of a public official, rather, the threat is implicit in the power he wields by virtue of his office:

"The rationale is, that subsumed in the official title lies a dormant power, the office itself becomes the threat, the ominous spectre capable of retailing when provoked."

Thus, the courts have found extortion when an individual pays because he reasonably believes that if he did not an official might use his power to that individual's detriment.

*Id.*

In this case, we find that the prosecution has met its burden. During the time of the conspiracy, DACI was under investigation by Hacienda, as it owed it $163,136. Business Owner was also being investigated (**Docket # 51, at 52**). DACI, however, was not operational at the time of the conspiracy. But while DACI was not doing any business by then, AC & GC, the purportedly "new" corporation partially owned by Business Owner, was. For its operations, AC & GC purchased articles that were brought into Puerto Rico from the United States mainland, thereby engaging in interstate commerce. By the time of the conspiracy, however, AC & GC was in dire financial straits. A reasonable jury could find that paying $10,000 so that DACI's and Business Owner's outstanding debt with Hacienda would be eliminated, depleted AC & GC's assets, so that its ability to purchase the articles necessary for its operations was impaired. Neither the fact that DACI did not exist at that time the charged offenses were committed nor the fact that Business Owner may have not been personally engaged in interstate commerce are not relevant for purposes of meeting the jurisdictional predicate under the Hobbs Act. Regarding DACI's inoperative status, Hacienda may have initiated collection proceedings

against AC & GC and/or Business Owner under a successor in interest or alter ego theory. As to the possibility of Business Owner not being personally engaged in interstate commerce, a jury could reasonably find, as the government contends, that Business Owner was forced to take from AC & GC's assets, thereby curtailing AC & GC's ability of purchase the necessary articles for its operations. *Cf. United States v. Esposito,* 771 F.2d 283, 285 (7th Cir.1985). For the foregoing reasons, defendants motion challenging subject matter jurisdiction is hereby **DENIED.**

   **SO ORDERED.**